## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

BRYON JACKSON and
MARIO MENA, JR.
      Plaintiffs,

v.

ANHEUSER-BUSCH INBEV SA/NV, LLC,
and MIAMI BEER VENTURES, LLC
      Defendant.
_____/

Civil Action No.

**CLASS ACTION**

*JURY TRIAL DEMANDED*

### CLASS ACTION COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

The Plaintiffs, BYRON JACKSON and MARIO MENA, JR., by and through their undersigned attorneys, files this Class Action Complaint for Injunctive and Other Relief against Defendants, Anheuser-Busch InBev SA/NV, LLC, ("ABI") and Miami Beer Ventures LLC ("MBV") (collectively "Defendants"), and state:

### PRELIMINARY STATEMENT

1.      Defendants make and sell beer under the name Veza Sur.  Veza Sur pretends to be a craft beer made in Miami and with Latin roots.  In reality, it is simply another one of the dozens of brands made by the largest brewer in the world, Anheuser-Busch.  It has no authentic Latin roots, and is not even made in Miami.  Defendants' misrepresentations have deceived the Plaintiffs who thought they were purchasing a craft beer that was made in Miami by a small brewery.

### PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff BYRON JACKSON, is a citizen of Florida who resides in Miami-Dade County, is over the age of eighteen years, and is otherwise sui juris.

1

3. Plaintiff MARIO MENA, JR., is a citizen of Florida who resides in Miami-Dade County, is over the age of eighteen years, and is otherwise sui juris.

4. ABI is incorporated in Belgium, with headquarters in the United States in St. Louis, Missouri and New York City, New York.

5. MBV is a Florida limited liability company with a principal address in Miami, Florida, a registered agent in Miami, Florida, and a mailing address in St. Louis, Missouri.

6. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class action exceed $5,000,000.00, exclusive of interest and costs, because the Plaintiffs bring this action on behalf of the proposed classes that are comprised of over one hundred members, and because at least one of the members of the proposed classes is a citizen of a different state than ABI. Further federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims took place within this District, because distribution, advertisement, and sale of the beers at issue occurred within this District, and because documents and witnesses will be located in this District.

8. All conditions precedent to the filing and maintenance of this action have occurred, been performed, or been waived.

## GENERAL ALLEGATIONS

**Context for the current beer market: The development of "craft beer" in the United States**

9.      According to Ari Shapiro "the story of beer is the story of America."[1]

10.      A large wave of German immigrants in the second half of the 1800s, with their brewing techniques, tradition, and new yeast strain sparked the first beer revolution in the United States, ultimately leading to neighborhoods filled with breweries by 1900.[2]

11.      For example, there was the storied "Brewers' Row" in Bushwick, Brooklyn where there were 11 breweries in a 12-block area.[3]

12.      Prohibition, which lasted from 1920 until 1933, decimated the beer industry and ultimately the American consumer lost its taste for traditional beer flavors; beginning in the 1950's large breweries began producing lighter styles of beer.[4] [5]

---

[1]  *See* https://www.npr.org/sections/thesalt/2017/07/03/532250762/how-the-story-of-beer-is-the-story-of-america?utm_source=twitter.com&utm_medium=social&utm_campaign=npr&utm_term=nprnews&utm_content=20180704, "If you want to talk about the history of immigration in America, or urbanization or the expansion of transportation networks, really any subject that you want to explore, you can talk about it through beer."

[2]  *Id.*

[3]  https://beerandbrewing.com/dictionary/Aq7FFTStrH/

[4]      *See*      https://www.wsj.com/articles/americas-bad-taste-in-beer-is-prohibitions-legacy-11579219039?mod=searchresults&page=1&pos=5, "The popularity of soft drinks soared during prohibition and Americans started their long love affair with sugary carbonated beverages. Post-Prohibition, brewers had to produce beers that satisfied the country's changed palate. A brewer's digest article in 1938 expressed concerns about the ability of post-Prohibition drinkers to 'discriminate regarding the quality of beer.' They were 'unable to judge the fine points of beer with accuracy,' the magazine observed. 'To the majority of them such things as body, aroma, taste, and flavor are nothing but words.'".

[5]  "Beginning in the 1950's, the macros began to produce lighter and lighter styles of beer. This culminated in 1974, with Miller's successful introduction of Miller Lite, which had a third fewer calories and 10-15 percent less alcohol than traditional macro lager beer. Miller Lite was such a remarkable success that all the major macrobrewers soon followed with their own brands of light beer." Kenneth G. Elzinga, Carol Horton Tremblay, and Victor J. Tremblay, *Craft Beer in the United States: History, Numbers, and Geography*, Journal of Wine Economics Volume 10, Number 3, 2015, Pages 242, 255 https://liberalarts.oregonstate.edu/sites/liberalarts.oregonstate.edu/files/economics/pdf/faculty/tremblay-carol/tremblay_c_-_vol.10-issue03-craft-beer-in-the-united-states-history-numbers-and-geography-by-kenneth-g.-elzinga3.pdf

13.     In 1965, Fritz Maytag purchased the Anchor Steam Beer Company, which would have been considered the United States' last craft beer company, and sparked the craft beer revolution.[6]  In the 1980s, small breweries began appearing at a rapid pace in the United States, and have continued to produce what is considered to be "quality beer" in a variety of styles.[7] By 2015, this burgeoning craft brew scene was gaining market share with momentum, as "small and independent craft breweries had grown to a 21% share of the entire beer market, with a 13% rise in volume over the previous year."[8] These breweries represent "the birth of an entirely new beer industry."[9]

14.     The removal of the federal excise tax on homebrewing helped fuel this increase in market share because most craft breweries begin in someone's home.[10]  When the craft brew scene emerged, the oligopoly held by the largest producers, including ABI, began to wane. The number of breweries in the United States ballooned from 89 to more than 7,100.[11]

15.     By 2016, Florida alone had nearly 200 craft breweries, which accounted for a $2,000,000,000.00 economic impact.[12] But room for growth remained going into 2017.[13]

16.     Going into 2017, the desire for and market share of craft brewing was on the rise. And the ability to market oneself as an independent, craft brewery also has pricing implications.

---

[6] *Id*. at 246.
[7] Christopher J. Fraga, Note & Comment, *A Room with a Brew: A Comparative Look at Homebrewing Laws in Japan & the United States*, 72 U. Miami L. Rev. 1239, 1259-60 (2018).
[8] *Id*.
[9] *Id*.
[10] *Id. See also id.* at 1268-69.
[11] *See id.* (referencing dates from 1979 through 2016).
[12] *Id*.
[13] *Id*.

Consumers are willing to pay more for a beer from a brewery that tells a story and offers a craft product than they are for a beer that comes from a faceless corporate behemoth.[14]

17.     As Theresa McCulla explains, "one of the most interesting aspects of the history of American beer is that it has come full circle: from the early days of homebrews to mass-produced beer, through the crash of prohibition and back to a resurgence of microbreweries."[15]

**Consumers expectation of authenticity for beer designated as "craft" and "local"**

18.     Consumers prefer food products that are locally produced, as locally produced goods are considered to have higher quality, doing so supports local business, and its production involves less use of fossil fuels.[16]

19.     A study conducted by CR Research in 2019 found that almost half of the people surveyed stated they consume craft beer at least once a week. The driving force behind the appeal of craft beer was taste and quality.  Of those surveyed, 91% stated they preferred craft beer over big brand beer and 86% said they would pay more for the craft beer of their preference.[17]

20.     A majority of craft beer drinkers state they only buy beer sold in their region or town or city (local beer).[18]  Additionally, a recent study found consumers wanted to pay less money per pint for craft beer owned by large beer companies than those owned by an independent brewery.[19]  Further, a recent empirical study found, "when authentic organizations behave

---

[14]   *See*  brewersassociation.org/press-releases/2017-craft-beer-review/;   bevindustry.com/articles/90103-craft-brewers-capture-123-percent-share-of-beer-market-in-2016
[15]  *See* https://www.npr.org/sections/thesalt/2017/07/03/532250762/how-the-story-of-beer-is-the-story-of-america?utm_source=twitter.com&utm_medium=social&utm_campaign=npr&utm_term=nprnews&utm_content=20180704
[16]  *Elzinga* at 256.
[17]  *See* https://www.crresearch.com/blog/survey-reveals-factors-driving-craft-beer-growth,
[18]  *See* https://www.brewbound.com/news/power-hour-nielsen-shares-2019-craft-beer-consumer-insights
[19]   Jarret Hart,  *Drinkers   prefer   Big   Beer   Keeps   its   hands   off   their   local   craft   brews*, https://theconversation.com/drinkers-prefer-big-beer-keeps-its-hands-off-their-local-craft-brews-110488 February 12, 2019.

inauthentically" (specifically when a craft brewery sells to a macro brewery) that organization is "punished" by the consumer.[20]

21.     When it comes to craft beer, authenticity "may act as a considerable barrier to entry for larger organizations."[21]

22.     Larger organizations that attempt to acquire authenticity very well may be damaging the authenticity that made the smaller organization an attractive purchase in the first place.[22]

23.     Ultimately, consumers prefer local craft beer "but when a brewery is acquired it is no longer considered local."[23]

**"If people do the work to find out that we own these craft brands, God bless 'em": the world's most dominant brewery's relentless pursuit of craft and efforts to blur the definition for consumers**

24.     The sheer size and dominance of ABI in the United States and global beer market cannot be overstated.

25.     In 2019, ABI had 39.9% of the market share of all beer sold in the United States.[24]

---

[20] Justin Flake, *Selling Out: The Inauthenticity Discount in the Craft Beer Industry*, Management Scient Volume                   63,                   Issue                   11 https://liberalarts.oregonstate.edu/sites/liberalarts.oregonstate.edu/files/economics/pdf/faculty/tremblay-carol/tremblay_c_-_vol.10-issue03-craft-beer-in-the-united-states-history-numbers-and-geography-by-kenneth-g.-elzinga3.pdf,

[21] *Id.*
[22] *Id.*
[23] Jarrett Hart, *Scraping the Bottom of the Beer Barrel: Consumer Preferences for Localness and Responses to Brewery Acquisitions*, https://poseidon01.ssrn.com/delivery.php?ID=50507408211409601910300212700510402904904705608 40300891240650950091230731270990680020521030550521041160230971151200020720840980280450 3604106502602110321004030002025077028077026089122093096094069094094121071118018067005025080107113101106112002120083126&EXT=pdf last revised April 2, 2019.
[24] *See*  https://www.nbwa.org/resources/industry-fast-facts

26.    As of 2016, of the estimated 3,000 U.S. beer distributors, approximately 1,110 are aligned with brewers such as ABI or Miller Coors.[25]

27.    Absent several exceptions, alcohol in the United States typically travels through the "three tier system", from manufacturers/importers, to distributors, to the retail market.  Distributors play a pivotal role in the way beer reaches consumers and ultimately the success of breweries.[26]

28.    When looking at craft brands it may acquire, ABI's ability to distribute the craft beer through its own distributors is critical to ABI's decision whether to purchase the brand, as well as the brand's success.[27]

29.    In the early 1990s, ABI attempted to determine how it could profit from a surge in the popularity of craft beer.  However, ABI could not duplicate the authenticity of craft beers.

---

[25] *See* https://www.reuters.com/article/us-Anheuser-i-craftbeers-probe-exclusive-idUSKCN0YG0EG ,

[26]    *See*    https://marker.medium.com/how-the-worlds-biggest-brewer-killed-the-craft-beer-buzz-e205a28ff632, "As the linchpin between producers and retailers in the United States' peculiar post-prohibition booze-selling system, distribution is as crucial to a brewers' success as their beer—if not more so….But since 1980, the number of traditional beer distributors has decreased from over 4,500 to around 3,000 according to the National Beer Wholesaler Association.  This benefits big brewers like ABI.  The fewer access points to the market there are, the more sway macrobrewers have over those that remain.  That is, if they don't already own them outright.  In his book, Noel reported that ABI has actually bought up 18 distributorships in states where its legal to do so…And lo: ABI has 'an absolute hammerlock on distribution,' said the American Antitrust Institute's Moss'".

[27] "The other strategic thing I think is very critical for us we are very biased about our wholesalers.  We want to make sure that we partner with other brewers that we have the ability to have those brands distributed through our network our distribution network, we've got quite a successful distribution network 500 plus distributors out there it's kind of world class distribution system so we want to make sure we're able to utilize that and build our brands through our system that's a key component to us in terms of building a brand because some of things you talked about earlier is very true in terms of distribution in terms of being able to get on the shelf….it's critical…we talk to a lot of different craft businesses owners and as they start to get big start to have too much of that competitive distribution network in the mix and that is something we look at" Andy Goeler, A-B InBev's CEO of Craft (at the time) speaking at BrewBound Session Chicago: Exploring ANHEUSER InBev's High End Portfolio, accessed via https://www.youtube.com/watch?v=ajyXRVCgP5o June 18, 2015 starting around 2:00 mark and continuing to 3:40.

Nevertheless, ABI created craft brands such as Pacific Ridge, and by utilizing its Michelob brand to introduce a wide variety of crafty beers.  However, those ventures were not successful.[28]

30.     ABI also made its first craft purchases in the early 1990s, including minority stakes in Red Hook Brewing in 1994 and Widmer Brothers in 1997.[29]

31.     ABI made clear to its investors that the true purpose for this investment in craft beer was to perk up and support Budweiser: "[i]n the halls of Anheuser-Busch, the message was clear: craft existed only to defend Bud and Bud Light."[30]

32.     By 2010, craft beer was on the rise again and 2011 saw the beginning of a new wave of ABI purchases of craft brewers:[31]

- 2011 Goose Island Brewing Company

- 2014 Bluepoint Brewery

- 2014 10 Barrel Brewing

- 2015 Elysian Brewing

- 2015 Golden Road Brewing

- 2015 Breckenridge Brewing

---

[28]     *See*     https://marker.medium.com/how-the-worlds-biggest-brewer-killed-the-craft-beer-buzz-e205a28ff632, "Schoen tried to build an answer to craft beer from within the company, launching look-alike brands that had little apparent connection to Anheuser-Busch, aping Sierra Nevada with Pacific Ridge and Shiner Bock with ZiegenBock.  It was a begrudging admission in St. Louis that microbrewing was no mere fad…It did not go well."

[29] *Id.*

[30] "By 1998 the Specialty Group abandoned the American Originals and went all in on the Michelob beers. In the company's annual report, August Busch III noted that the specialty segment was still growing faster than the rest of the industry and that it provided higher profit margins.  But the category's true use, he said, was propping up the sagging Budweiser: 'Eighty percent of the specialty volume is consumed by drinkers who regularly drink mainstream brands.  So, the favorable impressions of Anheuser-Busch generated by our specialty portfolio carry over and have positive impact on our mainstream brands.'"  Josh Noel, *barrel-Aged Stout and Selling Out: Goose Island, Anheuser-Busch, And How Craft Beer Became Big Business*, pg. 76.

[31] *See* https://vinepair.com/craft-beer-sales/; *See also* https://www.brewbound.com/news/anheuser-busch-inbev-acquires-platform-beer-co

- 2015 Four Peaks Brewing

- 2016 Devils Backbone Brewing

- 2016 Karbach Brewing

- 2017 Wicked Weed Brewing

- 2019 Platform Brewing

33.     While publicly ABI claims no overarching strategy to the its purchases, observers of the beer market have taken note of "ABI's hidden strategy" to  "acquir[e] craft proxies in the country's most important beer markets, geographically encircling the nation's brewers and the drinkers they served."[32]

34.     However, ABI's craft beer purchases are not limited to breweries; ABI has also purchased Northern Brewer, which is an online homebrewing commerce platform, and RateBeer.com, which is an online beer-ranking forum.[33]

35.     ABI has also launched a partnership with publisher Conde Nast to create a digital publication about beer culture.[34]

36.     Further, ABI has pushed back against efforts by craft brewers to promote and encourage true craft brewing.  The Brewer's Association is a not-for-profit trade organization representing America's small and independent craft brewers.  The multitude of craft brewery purchases by larger breweries and the blurring of the term "craft" led the Brewer's Association to

---

[32]     *See*      https://marker.medium.com/how-the-worlds-biggest-brewer-killed-the-craft-beer-buzz-e205a28ff632,.

[33] *Id.*

[34] "Investments like *October* give ABI a platform to promote its vision for a post-craft future—a future that favors its brands position in the market.  In the coming age, 'beer-positive, bring the industry together-type thinking' will carry the day, said Meg Lagesse, the director of communications for ABI's craft business unit." *Id*.

introduce a certification seal in 2017 (the "Independent Seal").  That Independent Seal on a beer's package certifies that the brewer meets the organization's definition of craft brewer.[35]

37.     To qualify as a craft brewer per the Brewers Association (1) a brewery must produce six million barrels of beer or less annually; (2) less than 25 percent of the craft brewery can be owned or controlled—or equivalent economic interest—by a beverage alcohol industry member which is not itself a craft brewer, and (3) a TTB Brewer's Notice must be present.[36,37]

38.     The Independent Seal clearly hit a nerve with ABI.  Just three days later it released a video on its own Vimeo Account titled "*Six View Points From the High End*," where six employees of ABI's recently purchased breweries gave their take on the Independent Seal.[38]  The "High End" is how ABI refers internally to its craft and import divisions, including Veza Sur.[39]

39.     Dave Buhler, from Elysian Brewing, states, "well to be independent would mean you don't put the logo on because you're indie.  So, to be truly punk you don't use the logo.  You do your own thing and you follow your own rules."[40]

40.     Garret Wales from 10 Barrel Brewing states "at the end of the day the beer does the talking not the label on the package and the consumer makes up their own mind.  The problem is the BA continues to refuse to let the consumer make up their own mind and try to make it up for

---

[35]     *See*     https://www.brewersassociation.org/press-releases/brewers-association-launches-new-seal-designate-independent-beers/, "[a]s Big Beer acquires former craft brands, beer drinkers have become increasingly confused about which brewers remain independent.  Beer lovers are interested in transparency when it comes to brewer ownership.  This seal is a simple way to provide that clarity-now they can know what's been brewed small and certified independent."

[36] *See* https://www.brewersassociation.org/insights/independent-craft-brewer-seal/

[37] It should be noted that the 6 million barrel corresponds to the highest level of federal excise taxes paid on beer.  *See*, https://www.ttb.gov/tax-audit/tax-and-fee-rates.

[38] The High End, *Six View Points from the High End*, https://vimeo.com/223773287

[39] *See* https://www.brewbound.com/news/anheuser-busch-inbev-reorganizes-high-end-division/

[40] *Id.* 3:54 to 4:03.

them.  They got a little bottle that someone told me that's what I have to buy because there is a little bottle on the six pack that doesn't mean s*** to me."[41]

41.     Felipe Szpigel, the president of ABI's "The High End" also gave an interview to Men's Journal stating that the Independent Seal is "divisive" and the best thing to do is to "unite the development of the [beer] category."  Szpigel further states that craft beer to him is "beer, its story and it's community impact" and that there is no difference between craft and non-craft beer.[42]

42.     Initially, ABI did not deny that it was being opaque about which craft beers it owned.  Indeed, in 2013, ABI's chief marketing officer tacitly admitted that it intended to hide its ownership of craft breweries, stating "[i]f people do the work to find out that we own these craft brands, God bless'em.'"[43]

**The development of consuming "Wynwood" and "Miami"**

43.      As of the 1970s, the Wynwood area of Miami was known for garment manufacturing, attracting shoppers from South America and other locations.[44] However, after a troubled time for South American economies, those shoppers left and the neighborhood became impoverished and unsafe.

44.     By the early 2000s, however, the neighborhood was turning around.[45] The Wynwood area was undergoing a city beautification and began to attract businesses. Commercial art galleries began to open.[46]

---

[41] *Id.* 1:46 to 2:03.
[42]     *See*        https://www.mensjournal.com/food-drink/ab-inbev-responds-to-the-introduction-of-the-independent-craft-brewer-seal-w490506/
[43] Noel at 377.
[44] wynwoodartwalk.com/brief-history-of-wynwood/.
[45] *Id.*
[46] *Id.*

45.     At the same time, the commercial areas that would later become Midtown were being constructed.[47] The area was revitalized with entirely new commercial blocks and residential buildings. Restaurants and cafes began to open.[48]

46.     Due in part to its "Second Saturday" monthly art walks, Wynwood was becoming a tourist location and a spot for locals to "see and be seen."[49] Companies offered tours of the area, including bicycle tours of the murals and graffiti, as well as walking tours.[50]

47.     Today, Wynwood boasts more than 70 galleries, collections, and museums.[51] The "Second Saturday" art walks attract thousands of people.[52] The graffitied walls in Wynwood have grown in popularity so much they have their own coffee table book, "Walls of Change: the Story of the Wynwood Walls."[53]

48.     In 2018 alone, 2,900,000 people visited Wynwood, spending $526,000,000.[54]

49.     Part of Miami and Wynwood's recent success stems from Art Basel, an annual art fair with more than 269 galleries from 29 countries.  Miami is one of only three Art Basel locations in the world —the other two being Basel, Switzerland and Hong Kong.[55] Since 2002, Art Basel has been held in December in Miami Beach.  In its Miami iteration, in 2014 the event drew 75,000 visitors to Miami Beach.[56] Since then, it has expanded, and now drives more than 100,000 art tourists to South Florida annually.[57]

---

[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] miamiherald.com/news/business/real-estate-news/article232609437.html.
[54] *Id.*
[55] naiop.org/en/Research-and-Publications/Magazine/2015/Winter-2015-2016/Development-Ownership/Creating-Value-With-Art-and-Design.
[56] *Id.*
[57] *Id.*

50.     Miami, of course, is also home to other cultural and international events, including but not limited to the Ultra Music Festival, the 2020 Super Bowl, the Miami International Boat Show, the Coconut Grove Arts Festival, the Food Network & Cooking Channel South Beach Wine & Food Festival, Calle Ocho, the Miami Open, the New Times Brew at the Zoo, Miami Beach Pride, Miami Fashion Week, Miami Funkshion Swim Week, and Circuit Miami.[58]

51.     In other words, both "Wynwood" and "Miami" have become brands that create an expectation for consumers regarding the nature of the products produced there.[59]

**Veza Sur: macrobeer disguised as craft beer**

52.     Against this backdrop, the Veza Sur brewery opened in 2017.

53.     Defendants intentionally and deliberately portray Veza Sur as a local, craft brewery that is born from, part of, and made in Miami.  It masquerades as having Latin-American roots.

54.     In reality, Veza Sur is owned and operated by ABI.

55.     Defendants present Veza Sur as "Wynwood's Latin Craft Brewery & Bar."[60] According to its presence on Google results, Veza Sur is "Miami-born with Latin American roots."[61]

---

[58] miamiandbeaches.com/events/annual-events
[59] *See, e.g.*, miamiandbeaches.com/neighborhoods/wynwood (discussing the evolution of Wynwood); miamiandbeaches.com/about-gmcvb/gmcvb-staff-directory/travel-industry-sales-marketing-team (explaining, "Our global representation network covering 53 countries allows us to make global connections by actively participating in high-profile industry events, fostering relationships and expanding business opportunities for our member partners"); miamiandbeaches.com/press-room/miami-press-releases/state-of-industry-2017 (discussing the "authentic" and "soul stirring" nature of Wynwood); cnn.com/travel/article/most-visited-cities-euromonitor-2018/index.html (providing that Miami is one of the most visited cities in the world); https://www.theglobeandmail.com/report-on-business/top-business-stories/vogue-names-torontos-queen-street-west-worlds-second-hippest-district/article20488696/ (citing Vogue's naming Wynwood one of the 10 hippest districts in the world)
[60] www.google.com/search?q=veza+sur+beer&oq=vera+sur+&aqs=chrome.1.69i57j0l7.4999j0j7&sourceid=chrome&ie=UTF-8
[61] *Id.*

56.     Defendants represent that its founding was "inspired by the travels of twin brothers and 10 Barrel Brewing cofounders Chris and Jeremy Cox.  They, along with Max-Antonio Burger, who is in charge of new ventures and innovation at ABI, traveled to South America to explore its beer, food and culture. Shortly after, they learned that Berny Silberwasser, founder of Bogota Beer Company, was looking to start a project in Miami. The result is the soon-to-open Veza Sur Brewing."[62]

57.     10 Barrel Brewing is owned by ABI.

58.     Max Antonio Burger works for ABI.

59.     Bogota Beer Company is owned by Ambev, the Brazilian subsidiary of ABI.[63]

60.     None of these people who allegedly developed the idea for Veza Sur is mentioned on Veza Sur's website.  Neither is their affiliation to ABI.

61.     According to the Florida Secretary of State website, the company operating as Veza Sur is Miami Beer Ventures LLC.

62.     Although the company was originally founded in 2013 by Mr. Silberwasser, he was removed as manager and replaced by ABI employee Max Antonio Burger on December 22, 2016.

63.     In fact, the mailing address for MBV is One Busch Place, St. Louis, MO 63118, which is ABI's address.

64.     Presently, there are 15 authorized representatives for MBV listed with the Florida Secretary of State, all of whom list their address as either ABI's corporate headquarters or ABI's corporate strategy office.[64]

---

[62]   *See*   https://www.miaminewtimes.com/restaurants/anheuser-busch-opening-veza-sur-brewing-co-in-wynood-9284101

[63]   *See*   https://www.financecolombia.com/budweiser-in-bbc-bogotAnheusereer-company-acquired-by-inbevs-ambev-unit/

[64] 125 W 24th Street New York, NY 10011, which is also the address for ZX Ventures, another ABI-owned company.

65.     Silberwasser is not listed as an authorized person for MBV.

66.     Each authorized representative works for ABI corporate, legal, or an ABI brewery, except for Marshall Hendrickson who is a manager for Veza Sur (although his address is also ABI's corporate strategy office.)

67.     When Veza Sur was first announced in April 2017, the press released indicated the brand would only be available in Miami.[65]

68.     However, ABI had already filed an intent to use federal trademark application for Veza Sur on November 9, 2016.  Its application for trademark registration claims a priority date of May 12, 2016, based on a foreign trademark filing for the same mark in China.

69.     ABI obtained two trademarks for the mark Veza Sur, each of which have since been assigned to MBV.

70.     The home page of Veza Sur's website welcomes consumers with the greeting, ¡Bienvenidos!

71.     Upon clicking the "Beers" button, consumers are directed to a list of beer choices including the following:

- Lulo Sour

- Spanglish (Latin Lager)

- Chopp Latin Lager

- La Yuma (Dark Lager)

- Chopp Dark Lager

- Mangolandia (Mango Blonde Ale)

_____

[65] *See* https://www.brewbound.com/news/anheuser-busch-launch-latin-themed-craft-brand-miami

- Mala Yerba (Session IPA)

- Per'La Coffee Porter

- La Curita Imperial Stout

- Vezayuno Sour Dough Breakfast Ale

- Toronjipa

- No Reservations

- Flo-J

- Belgian Gator Ale

- Double IPA

- Arroz con Mango.[66]

Each of the beers is pictured in a glass that says, "Veza Sur Brewing Co." None of the beers list any other information regarding origin or ownership of the brand. For example, Spanglish (Latin Lager) is presented simply as a Latin beer from Veza Sur and for Miami.[67],[68]



---

[66] vezasur.com/beers/
[67] Interestingly, Spanglish has the same ABV content as Bud Light, another ABI product.
[68] Additionally, Veza Sur sells beer Michelada's made with Latin Lager. ABI produces "Bud Light Chelada" which is listed as bud light beer with natural flavor and certified color. https://www.budlight.com/en/our-beers.html

72. The "Latin" influence of each of the beers is highlighted throughout Veza Sur's descriptions. Lulo Sour is noted as "staying true to Lulo: a Colombian original."[69] Spanglish is not only called a "Latin Lager," but is promoted as being "[i]nspired by our Latin roots, crisp and refreshing, perfect for a hot Miami day."[70] Chopp Latin Lager is part of a "fresh and full bodied Brazilian tradition."[71] Mala Yerba is apparently where "West Coast meets Latin America."[72] Per'La Coffee Porter cannot help itself from being "cold-infused with a custom blend of medium and dark roasted Brazilian coffee."[73] La Curita Imperial Stout asks, "[q]ue mas quieres?"[74] Vezayuno Sour Dough Breakfast Ale is named "Vezayuno," which is literally Spanish for "breakfast." Arroz con Mango is noted for being a description provided by Veza Sur's "Cuban friends."[75] ABI has no Latin roots whatsoever, having been created by a German brewer in St. Louis, Missouri.

73. Additionally, Veza Sur announces to consumers that it is "Miami." Mangolandia ponders:

> Did you ever wake up from the sound of ripe mangos falling on your roof? This bright and sessionable Blonde Ale is Miami Summer in a glass.[76]

---

[69] vezasur.com/beer/lulo-sour/
[70] vezasur.com/beer/spanglish-latin-lager/
[71] vezasur.com/beer/chopp-latin-lager/. *See also* vezasur.com/beer/chopp-dark-lager/ (last accessed May 28, 2020).
[72] vezasur.com/beer/mala-yerba-session-ipa/
[73] vezasur.com/beer/perla-coffee-porter/ (advising, "[i]ts rich and smooth roast flavor will have you ditching your afternoon cafecito").
[74] vezasur.com/beer/la-curita-imperial-stout/
[75] vezasur.com/beer/arroz-con-mango/
[76] vezasur.com/beer/mangolandia-mango-blonde-ale/



Notwithstanding the fact that it is an India Pale Ale, Toronjipa is stated as being "Miami style."[77]

Flo-J is called a "Florida natural."[78] "Que rico meng!"[79]

74.    The Veza Sur Brewery is marketed as being local to Miami and having a homespun

feel. It is declared, "Miami-born with Latin American roots."[80] Photographs of four men appear

with captions like, "I've worked and lived in the Bahamas for 7 years as a boat captain," along

with other statements that denote a lack of attachment to a larger business enterprise.[81]

---

[77] vezasur.com/beer/toronjipa/
[78] vezasur.com/beer/flo-j/
[79] *Id.*
[80] vezasur.com/brewery/
[81] *Id.*



75.     Even the google maps link on the Veza Sur website cries "craft." Under a banner title, "Drink Beer Here," consumers are directed to a pin drop for the location, "Veza Sur Brewing, Brewery/taproom with craft suds."[82]



76.     The products themselves similarly reflect a commitment to the charade that Veza Sur is a local brewery in the business of brewing craft beer. The container of a six-bottle pack of

---

[82] vezasur.com/#wrapFooter

Spanglish asserts that Spanglish is a Latin Lager from Veza Sur Brewing Co., "Bottles of Great Brews and Hella Good Vibes."  There is no corporation registered in Florida called Veza Sur Brewing Co.  Instead Veza Sur Brewing Co. is a fictious name registered by both MBV and Islamorada Brewing Company, LLC.



77.    The side of the packaging contains the hashtag, "HechaEnMiami," or "Made In Miami".



78.     The bottom of the packaging asserts that Veza Sur is a one-off location of a small business: "Our Pub > 55 NW 25th St. Miami, FL 33127."



79.     However, at least some, if not all Veza Sur beer is actually brewed at a facility in Fort Pierce, Florida and not in Miami.  For instance, one side of the Spanglish bottle claims to be made in Miami, and the other side admits (in much smaller print) that it is made in Fort Pierce, 130 miles away.



80.     Indeed, Veza Sur beers are brewed by the Islamorada Brewing Company, LLC, in Fort Pierce.

81.     In discussing the decision to begin bottling Veza Sur beers, the "Co-Founder" explained, "[s]ince opening 18 months ago, we've received great feedback on our beers and are super pumped that they are now available in bottles," adding, "'[o]ur focus is flavorful, tropical and easy drinking beers. We wanted our bottles to mirror our vibrant Miami and Latin roots."[83]

82.     The Official Site of Greater Miami and the Beaches describes Veza Sur as having "mysterious Brazilian and Latin American roots" that "create an expectation from the moment you hear its name …."[84]

83.     Both the website and the packaging for Veza Sur include graffiti-style artwork from @spainter, a Wynwood artist.

84.     Veza Sur's Instagram profile describes it as "[a] Miami-born craft brewery with Latin-American roots."[85]

85.     Defendants have marketed Veza Sur its brand as being distinctly Miami through its Instagram profile. For example, Defendants have described Veza Sur as bringing "Miami Brews" to New York, inviting "our MIA fam" to join it at an Oktoberfest:

---

[83] brewbound.com/news/anheuser-busch-begins-packaging-veza-sur-offerings-in-bottles
[84] miamiandbeaches.com/thing-to-do/nightlife/veza-sur-brewing-co/13318
[85] https://www.instagram.com/vezasurbrewingco/



86.     In the event that a consumer elects to click on the "Terms and Conditions," they may, for the first time, learn that the "website or mobile application," are "owned and provided by Anheuser-Busch."[86] The words "Veza Sur" do not appear in the Terms and Conditions. The Terms and Conditions direct consumers to the Beer Institute Advertising and Marketing Code.[87]

87.     That Code admonishes:

> Advertising and marketing materials are legitimate efforts by brewers to inform consumers of the particular styles and attributes of numerous beers and other malt beverages that are available. Brewer advertising and marketing materials also foster competition, persuade adult consumers of beer to try particular brands, and maintain customer loyalty.

> Brewers should employ the perspective of the reasonable adult consumer of legal drinking age in advertising and marketing their products, and should be guided by the following basic principles,

---

[86] vezasur.com/terms-and-conditions/
[87] *Id.*

which have long been reflected in the policies of the brewing industry and continue to underlie this Code:

…

- Advertising themes, creative aspects, and placements should reflect the fact that Brewers are responsible corporate citizens.[88]

88.    Further, the Code directly advises against the making of false or exaggerated claims:

4.    Beer advertising and marketing materials should not make the following exaggerated product representations:

a.    Beer advertising and marketing materials should not convey the impression that a beer has special or unique qualities if in fact it does not.[89]

89.    However, Defendants fail to inform consumers that Veza Sur is a macrobrew ABI brand, and not a craft Miami brand. Nor do Defendants afford consumers the knowledge or expectation that they will be drinking an ABI beer.  Instead Defendants traffic in the false idea Veza Sur has Miami, Brazilian, and/or Latin American roots.

90.    Despite all of Defendants false marketing and branding, Veza Sur is not a craft brewery.  Instead, it is just another beer from ABI, the largest beer company in the world.

**Plaintiffs' Experience with Veza Sur**

91.    At all relevant times, Plaintiff, BYRON JACKSON resided in, and continues to reside in, Miami-Dade County, Florida. During the relevant time period, BYRON JACKSON heard through local and social media of a new craft brewery opening in Wynwood.  BYRON JACKSON, being from and as a resident of Miami, takes into consideration the ownership of

---

[88] beerinstitute.org/responsibility/advertising-marketing-code/
[89]    beerinstitute.org/wp-content/uploads/2018/12/BEER-6735-2018-Beer-Ad-Code-Update-Brochure-for-web.pdf

businesses he frequents and consistently chooses to support locally owned businesses. Soon after Veza Sur's grand opening, BYRON JACKSON and a group of colleagues visited the purported "new local business," and proceeded to purchase a few rounds of various types of beer on draft. At that time, he and his colleagues were informed by the staff of Veza Sur about the creators being of and from Miami, and the brief history about the Veza Sur brand. Thereafter, BYRON JACKSON continued to patronize Veza Sur's Wynwood brewery multiple times a month and to invite friends and colleagues from out of town to brag about the "new Miami local craft brewery" several times a year. All of the marketing and information provided to patrons was that Veza Sur was a local Miami craft brewery. Shortly thereafter in 2019, BYRON JACKSON purchased approximately one (1) six-pack of a Veza Sur brand per month, to keep at home, from retailers licensed by the State of Florida to sell malt beverages. Each bottle of Veza Sur he purchased had a claim set forth on the label that the beer was bottled in Miami. BYRON JACKSON took Veza Sur's representations that Veza Sur was a local Miami craft brewery into account in visiting the brewery, inviting friends, and in making his purchases.  He would not have visited the Veza Sur brewery, invited friends, or purchased Veza Sur had he known that Veza Sur's representations were false. Based on Defendants' representations and claims, BYRON JACKSON purchased beer that had less value than what he paid, perpetuated the misrepresentation to friends, and he has suffered legally cognizable damages proximately caused by Defendant's misconduct. After learning the truth about ABI's mislabeling of Veza Sur, BYRON JACKSON stopped visiting the brewery and purchasing it at retailers. However, BYRON JACKSON, might resume visiting the brewery and resume purchasing Veza Sur if and when he learns that it is accurately labeled.

92.    At all relevant times, Plaintiff, MARIO MENA, JR resided in, and continues to reside in, Miami-Dade County, Florida. During the relevant time period, MARIO MENA, JR heard through local and social media of a new craft brewery opening in Wynwood.  MARIO MENA, JR, being from and as a resident of Miami, takes into consideration the ownership of businesses he frequents and consistently chooses to support locally owned businesses. Soon after Veza Sur's grand opening, MARIO MENA, JR, visited the purported "new local business," and proceeded to purchase a few different types of beers available on draft.  During his visit, he was informed by the staff of Veza Sur about the creators being of and from Miami, and the brief history about the Veza Sur brand. None of these representations, nothing inside the brewery or any other information was conveyed that Veza Sur was in fact an ABI brand. Thereafter, MARIO MENA, JR continued to patronize Veza Sur's Wynwood brewery multiple times a month and to invite friends from out of town to the "new Miami local craft brewery" several times a year. All of the marketing and information provided to patrons was that Veza Sur was a local Miami craft brewery. Shortly thereafter in 2019, MARIO MENA, JR purchased approximately one (1) six-pack of a Veza Sur brand per month, to keep at home, from retailers licensed by the State of Florida to sell malt beverages. Each bottle of Veza Sur he purchased had a claim set forth on the label that the beer was bottled in Miami. MARIO MENA, JR took Veza Sur's representations that Veza Sur was a local Miami craft brewery in visiting the brewery, inviting friends, and in making his purchases. He would not have visited, invited friends, or purchased Veza Sur had he known that Veza Sur's representations were false. Based on Defendants' representations and claims, MARIO MENA, JR purchased beer that had less value than what he paid, perpetuated the misrepresentation to friends, and he has suffered legally cognizable damages proximately caused by Defendant's misconduct. After learning the truth about ABI's mislabeling of Veza Sur, MARIO MENA, JR stopped visiting

the brewery and purchasing it at retailers. However, MARIO MENA, JR, might resume visiting the brewery and resume purchasing Veza Sur if and when he learns that it is accurately labeled.

93.     The Plaintiffs and the putative members of the classes defined herein have been and will continue to be deceived or misled by the Defendants' false and deceptive packaging and labeling and representations.

94.     The Defendants' website, Wynwood brewery, packaging, and labeling lead reasonable consumers to believe that Veza Sur is not owned by a large beer enterprise and is, in fact, a craft brewery with its origins and roots in Miami, Florida, Brazil, and Latin America.

95.     To the detriment of consumers, the subject website, brewery, packaging, and labeling are false and misleading because Veza Sur is an ABI brand.

96.     The false belief created by trafficking in the Wynwood, Miami, cultural heritage, and craft beer branding are material factors in influencing consumer purchase decisions.

97.     Had the Plaintiffs and putative class members known the truth about Veza Sur, they would not have purchased the beers or would not have paid the higher prices they paid for the beers.

98.     The Plaintiffs and each member of the putative classes have been harmed by purchasing the beers because they did not receive what they paid for.

99.      Had Defendants not made the representations described above, the Plaintiffs would not have made their purchases or would not have been willing to pay a premium for their purchases. If the Plaintiffs could rely upon the truthfulness of the defendant's labeling, they might continue to purchase the beers in the future.

100.     Defendants' misrepresentations cause confusion among consumers. Consumers believe they are purchasing craft beer that is made in Miami by a small, independent brewery.  But

in fact, they are purchasing beer brewed for the world's largest beer company in another part of the state.

101.    Defendants know that consumers are willing to pay more for craft and local beer products because the quality is higher, and Plaintiffs believe they are paying costs associated with craft beer that benefits the local economy.

102.    Furthermore, Defendants' misrepresentations cause confusion among retailers, restaurants, and bars. These establishments purchase Veza Sur and market Veza Sur to the general public as a craft beer. Many retailers and restaurants charge consumers a premium for craft beers and local beers, and consumers are therefore further damaged by defendant's misrepresentations. Retailers also typically group craft beers and local beers together, reinforcing the belief that Veza Sur is local, craft beer. Thus, consumers are further harmed by restaurants, bars, and retail stores selling Veza Sur at higher prices under the false belief that it is craft, local beer.

103.    As a result of Defendants' false, deceptive, and misleading packaging, labeling and omissions, consumers such as Plaintiffs are deceived when they purchase Veza Sur beer.  As a result of that deception, Defendants have collected millions of dollars from the sale of Veza Sur Beer that they would not have otherwise been paid.  The Plaintiffs and Class members paid money for a product that is not what it claims to be or what they bargained for. They paid a premium for Veza Sur Beer when they could have instead bought other, less expensive, domestic beer, and consumers have lost the opportunity to purchase and consume other, truly-local craft beer.

## CLASS ACTION ALLEGATIONS

104.    The Plaintiffs, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3),

bring this action on behalf of the following classes (the "Class"):

(a) All consumers who purchased Veza Sur beer at a retail location in the 48 contiguous
United States for offsite, personal, family, or household purposes and not for re-sale
after viewing Veza Sur's website, within the four years prior to the filing of this
Complaint.

(b) All consumers who purchased Veza Sur beer at Veza Sur's brewery for offsite,
personal, family, or household purposes and not for re-sale after viewing Veza Sur's
website, within the four years prior to the filing of this Complaint.

(c) All consumers who purchased Veza Sur beer at a retail location in the 48 contiguous
United States for offsite, personal, family, or household purposes and not for re-sale,
within the four years prior to the filing of this Complaint.

(d) All consumers who purchased Veza Sur beer in the State of Florida for offsite, personal,
family, or household purposes and not for re-sale after viewing Veza Sur's website,
within the four years prior to the filing of this Complaint.

105.    The following people are excluded from the classes: (1) any judge or magistrate

presiding over this action and members of their families; (2) the defendant, the defendant's

subsidiaries, parents, successors, predecessors, and any entity in which the defendant or their

parents have a controlling interest, and its current or former employees, officers, and directors; (3)

persons who properly execute and file a timely request for exclusion from the classes; (4) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

the Plaintiffs' counsel and the defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

106.     The Plaintiffs reserve the right to modify or amend the definition of the proposed classes and/or to add subclasses, if deemed necessary, before this Court determines whether certification is appropriate.

107.     **Numerosity pursuant to rule 23(a)(1):** While the exact number of class members is unknown at this time, there are thousands of Veza Sur branded beers sold and purchased, each purchaser of which is a potential class member in this action. The number of class members is so numerous that joinder of each member is impractical.

108.     **Commonality pursuant to rule 23(a)(2):** This action poses questions of law and fact that are common to and affect the rights of all members of the classes. Common questions of fact and law exist as to all members of the classes and such questions predominate over any questions solely affecting any individual member of the classes. The common questions include, but are not limited to:

(a) Whether the Defendants have engaged in deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Section 501.201, by: (a) representing their status as a local, Miami, craft brewery with Brazilian and Latin American roots, and by representing their products as locally-produced craft beers;

(b) Whether the Defendants' unfair and deceptive acts or practices were likely to deceive reasonable consumers about the true nature of the beers, which ABI markets, promotes, advertises, manufactures, distributes, and sells.

(c) Whether Defendants' representations regarding Veza Sur's status as a local, Miami, craft brewery with Brazilian and Latin American roots were false representations of material fact.

(d) Whether Defendants acceptance and retention of the monetary benefit conferred upon them by Plaintiffs and the members of the classes are inequitable and unjust because they paid a premium for the Defendants' products based on their beliefs that Veza Sur was a craft brewery, that the products were locally-produced, that Veza Sur was a locally-owned, Wynwood brewery, that Veza Sur was local to Miami, Florida, and/or that Veza Sur had Brazilian and Latin American roots.

(e) Whether the Defendants breached their express warranties to the class in violation of § 672.313, Florida Statutes, by providing a false express warranty by affirmation of fact or promise, or description of the beers, regarding the craft status, origin, and origin story of the beers.

(f) Whether the Defendants breached an implied warranty to Plaintiffs and the members of the class in violation of § 672.314, Florida Statutes, because the Defendant's products were unmerchantable in that they failed to conform to the promises or affirmations of fact made on the containers or labels.

(g) Whether the Defendants breached the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., by making false and misleading express warranties regarding the "craft" status of the beers, their origin, and the independence of Veza Sur.

(h) Whether the defendants have negligently made false and misleading representations of material fact regarding Veza Sur's status as a local, Miami, craft brewery with Brazilian and Latin American roots, the origin of its beers, and its independence.

(i)  Whether Defendants intentionally engaged in false advertising in violation of § 817.44, Florida Statutes offering for sale beers that were represented to be "craft," local to Wynwood, Florida and Miami, Florida, and with roots in Brazil and Latin America, and/or by placing or causing to be placed before the general public and advertisement describing beers that were "craft," local to Wynwood, Florida and Miami, Florida, and with roots in Brazil and Latin America, as part of a plan or scheme with the intent to sell beers that did not meet those qualifications.

(j)  Whether the Defendants disseminated or caused to have been made or disseminated before the general public of the state, or a portion thereof, a misleading advertisement, including statements made, or disseminated, in oral, written, electronic, or printed form or otherwise, to or before the public, or any portion thereof, as to the fact that the beers were "craft," local to Wynwood, Florida and Miami, Florida, and with roots in Brazil and Latin America, which were known or through the exercise of reasonable care or investigation could or might have been ascertained to be untrue or misleading.

(k)  Whether the Defendants conspired to engage in false or misleading advertising in violation of sections 817.41 and 817.44, Florida Statutes.

(l)  Whether Defendants have disseminated representations in a manner or means other than labeling, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase of food that were false or misleading because they were inaccurate in their description of the "craft" status of Veza Sur beers, Veza Sur's origin of Wynwood, Florida or Miami, Florida, and Veza Sur's Brazilian and Latin American roots.

(m) Whether Defendants misbranded their beers by labeling them in a manner that is false or misleading in any particular because they were inaccurate in their designation of the "craft" status of Veza Sur beers, Veza Sur's origin of Wynwood, Florida or Miami, Florida, and Veza Sur's Brazilian and Latin American roots.

(n) Whether the Plaintiffs and the members of the class have suffered damages as a result of the above-described conduct.

109.   **Typicality pursuant to rule 23(a)(3):** Based on the facts and circumstances set forth herein, the Plaintiffs' claims are typical of the claims of the members of the classes in that they arise out of the same deceptive or misleading acts, with regard to the same set of circumstances occurring during the same period of time, as described herein.

110.   **Adequacy of representation pursuant to rule 23(a)(4):** Based on the facts and circumstances set forth herein, the Plaintiffs will fairly and adequately protect and represent the interests of each member of the class. The Plaintiffs each purchased the beers, with at least one plaintiff purchasing the beers at the brewery, at least one plaintiff purchasing the beers in a retail location, at least one plaintiff purchasing the beers after having reviewed the terms online, and at least one plaintiff having not reviewed the terms online. In addition:

(a) The Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, actions regarding consumer protection class action cases.  Counsel has repeatedly been appointed as Class Counsel by state and federal courts behalf of consumers.

(b) There is no hostility between the Plaintiffs and the unnamed members of the class;

(c) The Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

(d) The Plaintiff's legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

111.     **Avoidance of risk pursuant to rule 23(b)(1)(A):** The prosecution of separate claims or defenses by or against individual members of the classes would create a risk of either inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct for the party opposing the classes and/or adjudications concerning individual members of the classes that would, as a practical matter, be dispositive of the interests of other members of the classes who are not parties to the adjudications, or substantially impair or impede the ability of other members of the classes who are not parties to the adjudications to protect their interests.

112.     **Appropriateness of declaratory or injunctive relief pursuant to rule 23(b)(2):** the Defendants have acted or refused to act on grounds generally applicable to all the members of the class with regard to the conduct complained of herein, making final injunctive relief or declaratory relief concerning the classes as a whole appropriate.

113.     **Superiority pursuant to rule 23(b)(3):** The questions of law or fact common to the claim of the representative party and the claim of each member of the classes predominate over any question of law or fact affecting only individual members of the classes, and class representation is superior to other available methods of adjudication. Because the amount of each individual members of the classes' claim is very small relative to the complexity of the litigation and because the financial resources of ABI are enormous, no member of the classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action,

the members of the classes will continue to suffer losses and the defendant's conduct will proceed without remedy. In addition, even if members of the classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action present far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

114.   The respective interests of each member of the classes in individually controlling the prosecution of separate claims is minimal, inasmuch as the claims would be similar and each claim, individually, would be too small to warrant individual litigation, thereby making controlling the prosecution meaningless in light of the fact that such claims would not be pursued.

115.   Upon information and belief, there is no pending litigation involving a member of the classes which poses a question of law or fact that would be controverted in this action.

116.   This forum presents a desirable location for the litigation because the brewery is located in Miami-Dade County, Florida and the beers are sold throughout this District.

117.   There are likely minimal difficulties in managing the claim on behalf of the classes because the members of the classes are unlikely to have opposing interests.

118.   The Plaintiffs have retained counsel that is experienced in handling class actions and other complex litigation over the last five years. As a result, the attorneys are qualified and experienced in class action litigation and will adequately protect the interests of the class.

<u>COUNT I</u>
**Violations of the Florida Deceptive and Unfair Trade Practices Act**
**Florida Statute Section 501.201, *et seq.***
**(Plaintiffs, Individually, and on Behalf of the Classes)**

119.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

120.    The Plaintiffs are "consumers" within the meaning of Florida Statute Section 501.203(7).  The Plaintiffs have standing to pursue this claim as they have suffered a concrete and tangible injury-in-fact and have lost money or property as a result of defendant's actions set forth above.

121.    ABI is engaged in "trade or commerce" within the meaning of Florida Statute Section 501.203(8).

122.    MBV is engaged in "trade or commerce" within the meaning Florida Statute Section 501.203(8).

123.    In light of the allegations raised herein, the Plaintiffs, individually and on behalf of the members of the classes, are authorized to bring a claim under the Florida Deceptive and Unfair Trade Practices Act, pursuant to Florida Statute Section 501.211, for declaratory relief, injunctive relief, actual damages, and attorneys' fees and costs as provided under Florida Statute Section 501.2105. The Plaintiffs, individually and on behalf of the members of the classes, seeks all such relief herein and are entitled to this relief.

124.    In violation of Florida Statute Section 501.204, Defendants have engaged and continues to engage in unfair and deceptive acts, including representing their status as a local, Miami, craft brewery with Brazilian and Latin American roots and representing the products they produced for sale as local-produced craft beers.

125.    It was reasonable for consumers, including the Plaintiffs and members of the classes, to rely on these representations regarding the craft status, origin, and roots of their products.  Had the Plaintiffs and members of the classes known the representations were false and misleading, they would not have purchased the beers or would not have paid a premium for them.

126.    The unfair and/or deceptive acts or practices were likely to deceive reasonable consumers, such as the Plaintiffs and the members of the classes, about the true nature of the beers, that ABI markets, promotes, advertises, manufactures, distributes, and sells.

127.    Defendants' business practices, as alleged herein, are "unfair" because they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to Plaintiffs and consumers. Additionally, Defendants' conduct is unfair because it violates the legislatively declared policies in the FDUTPA. Defendants misled consumers into believing that its product was a local, craft beer from Miami when it was not and ABI concealed this fact from consumers.

128.    The violations of the statutory scheme are a proximate cause of injuries suffered by the Plaintiffs and members of the classes and, therefore, the Plaintiffs and the classes are entitled to actual damages, declaratory and injunctive relief, and attorneys' fees and costs.

129.    The Plaintiffs and members of the classes are also entitled to injunctive and declaratory relief, enjoining Defendants from omitting ABI's ownership and production of Veza Sur and its beers and declaring same unlawful.

## COUNT II
### Fraudulent Misrepresentation
### (Plaintiffs, Individually, and on Behalf of the Classes)

130.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

131.    Defendants have represented and continue to commit false representation of material fact regarding Veza Sur's status as a local, Miami, craft brewery with Brazilian and Latin American roots.

132.    Defendants knew that the subject representations were false.

133.    The subject representations were made for the purpose of inducing the Plaintiffs and members of the classes to purchase the beers and/or to pay a premium price for the beers.

134.    As a result of the subject representations, and in justifiable reliance on Defendants' omissions of its relation to Veza Sur and affirmative misrepresentations regarding Veza Sur's status as a local, Miami, craft brewery with Brazilian and Latin American roots, the Plaintiffs and members of the classes were induced into purchasing the beers and/or paying a premium price for the beers, causing injury to the Plaintiffs and members of the classes.

## COUNT III
### Unjust Enrichment
### (Plaintiffs, Individually, and on Behalf of the Classes)

135.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

136.    The Plaintiffs and members of the classes conferred a benefit on Defendants, to wit: the Plaintiffs and members of the class paid monies for the beers.

137.    Defendants had knowledge of these transactions.

138.     Defendants voluntarily accepted and retained the monetary benefit conferred under circumstances that are inequitable and unjust in light of the retention of the benefit without payment to the Plaintiffs and members of the classes of any premium paid on account of the acts and referenced acts and omissions.

139.     Specifically, the Plaintiffs and members of the classes paid a premium for the beers based on their beliefs that Veza Sur was a craft brewery, that the beers were locally-produced, that Veza Sur was a locally-owned, Wynwood brewery, that Veza Sur was local to Miami, Florida, and/or that Veza Sur had Brazilian and Latin American roots.

140.     Had the Plaintiffs and members of the classes known that the representations that Veza Sur was a craft brewery, that Veza Sur was a locally-owned, Wynwood brewery, that Veza Sur was local to Miami, Florida, and/or that Veza Sur had Brazilian and Latin American roots were false or inaccurate, they would not have purchased the beers or would have paid less for the beers than they paid.

141.     As a result, the Plaintiffs and members of the classes have suffered monetary damages.

## COUNT IV
### Breach of Express Warranty, § 672.313, Florida Statutes
### (Plaintiffs, Individually, and on Behalf of the Classes)

142.     The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

143.     The Plaintiffs and members of the classes purchased the beers.

144.     Defendants provided an express warranty by affirmation of fact or promise, or description of the beers, regarding the craft status, origin, and origin story of the beers.

145.     The beers failed to conform to the affirmation or description.

146.    The Plaintiffs and member of the classes have suffered money damages as a result of these breaches.

## COUNT V
### Breach of Implied Warranty, § 672.314, Florida Statutes
### (Plaintiffs, Individually, and on Behalf of the Classes)

147.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

148.    The Plaintiffs and members of the classes purchased the beers.

149.    The Plaintiffs and members of the classes were foreseeable users of the products.

150.    A warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Therefore, a warranty of merchantability is implied in every sale of beer labeled as a Veza Sur beer to the Plaintiffs and members of the classes.

151.    To be merchantable, beers were required to conform to the promises or affirmations of fact made on the containers or labels.

152.    The beers failed to conform to the affirmation or description.

153.    By selling beers falsely labeled in the manner described throughout this complaint, Defendants have breached the implied warranty of merchantability with each sale to the Plaintiffs and members of the classes.

154.    If the Plaintiffs and members of the classes had known of the true nature of the beers, they would not have purchased the products or would have not been willing to pay the inflated price.

155.    The Plaintiffs and member of the classes have suffered money damages as a result of these breaches.

## COUNT VI
### Breach of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.
### (Plaintiffs, Individually, and on Behalf of the Classes)

156.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

157.    The Plaintiffs and members of the classes are consumers as defined under 15 U.S.C. § 2301(3).

158.    The beers are consumer products as defined in 15 U.S.C. § 2301(1).

159.    Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

160.    In connection with the sale of the products, Defendants issue written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties regarding the "craft" status of the beers, as well as the origin and origin stories of the beers and the independence of Veza Sur.

161.    The products do not conform to the express warranties because each of the express warranties is false and misleading. The beers are not "craft," the origin is not Miami, Florida and Wynwood, Florida, the roots of the beers do not derive from Brazil and Latin America, and Veza Sur is not independent of a larger beer conglomerate.

162.    By reason of the breaches of warranties, Defendants violated the statutory rights of the Plaintiffs and members of the classes pursuant to the Magnuson-Moss Warranty Act, thereby damaging the Plaintiffs and members of the classes.

163.    The Plaintiffs and the members of the classes have suffered damages as a direct and proximate result of these breaches because they would not have purchased the beers if they had known the truth about the products or they would not have been willing to pay the inflated price.

## COUNT VII
### Negligent Misrepresentation
### (Plaintiffs, Individually, and on Behalf of the Classes)

164.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

165.    Defendants have represented and continue to commit false representation of material fact regarding Veza Sur's status as a local, Miami, craft brewery with Brazilian and Latin American roots.

166.    Defendant's should have known the representations were false.

167.    The subject representations were made for the purpose of inducing the Plaintiffs and members of the classes to purchase the beers and/or to pay a premium price for the beers.

168.    As a result of the subject representations, and in justifiable reliance on Defendant's omissions of its relation to Veza Sur and affirmative misrepresentations regarding Veza Sur's status as a local, Miami, craft brewery with Brazilian and Latin American roots, the Plaintiffs and members of the classes were induced into purchasing the beers and/or paying a premium price for the beers, causing injury to the Plaintiffs and members of the classes.

## COUNT VIII
### Intentional False Advertising, § 817.44, Florida Statutes
### (Plaintiffs, Individually, and on Behalf of the Classes)

169.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

170.    Defendants have offered for sale or issued invitations for offers for sale beers that were "craft," local to Wynwood, Florida and Miami, Florida, and with roots in Brazil and Latin America, by placing or causing to be placed before the general public and advertisement describing beers that were "craft," local to Wynwood, Florida and Miami, Florida, and with roots in Brazil

and Latin America, as part of a plan or scheme with the intent to sell beers that did not meet those qualifications.

171.    The Plaintiffs and members of the classes relied on the advertisements in purchasing the beers and/or paying a price premium for the beers.

172.    The Plaintiffs and the members of the classes have suffered damages as a direct and proximate result of these actions because they would not have purchased the beers if they had known the truth about the products or they would not have been willing to pay the inflated price.

## COUNT IX
### Misleading Advertising, § 817.41, Florida Statutes
### (Plaintiffs, Individually, and on Behalf of the Classes)

173.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

174.    Defendants have disseminated or caused to have been made or disseminated before the general public of the state, or a portion thereof, a misleading advertisement, including statements made, or disseminated, in oral, written, electronic, or printed form or otherwise, to or before the public, or any portion thereof, as to the fact that the beers were "craft," local to Wynwood, Florida and Miami, Florida, and with roots in Brazil and Latin America, which were known or through the exercise of reasonable care or investigation could or might have been ascertained to be untrue or misleading.[90]

175.    The advertisements were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of personal property or services of a nature or to

---

[90] Florida Statute 500.115 states, "An advertisement of a food is deemed to be false if it is false or misleading in any particular."

induce the public and the Plaintiffs and the class members to enter into any obligation relating to such property or services.

176.    The Plaintiffs and members of the classes paid a price premium for the beers.

177.    The Plaintiffs and the members of the classes have suffered damages as a direct and proximate result of these actions because they would not have purchased the beers if they had known the truth about the products or they would not have been willing to pay the inflated price.

## COUNT X
### Civil Conspiracy
### (Plaintiffs, Individually, and on Behalf of the Classes)

178.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

179.    Defendants conspired to engage in the false or misleading advertising alleged herein, violation of sections 817.41 and 817.44, Florida Statutes.

180.    Defendants executed the overt act of engaging in the described advertisements.

181.    The Plaintiffs and the members of the class have suffered damages as a result of the acts performed through the conspiracy, including the purchase of beers they would not otherwise have purchased or the payment of a price premium for the beers.

## COUNT XI
### False Advertising and Misbranding, § 500.04, Florida Statutes
### (Plaintiffs, Individually, and on Behalf of the Classes)

182.    The Plaintiffs reallege and incorporate paragraphs 1 through 118 as though fully set forth herein.

183.    Defendants have disseminated representations in a manner or means other than labeling, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase of food within the meaning of section 500.03(1)(n)1, Florida Statutes

184.     Those representations were false or misleading in any particular because they were misleading in their designation of the "craft" status of Veza Sur beers, Veza Sur's origin of Wynwood, Florida or Miami, Florida, and Veza Sur's Brazilian and Latin American roots.

185.     Defendants have also misbranded the beers by labeling them in a manner that is false or misleading in any particular.

186.     That branding was false or misleading because they were misleading in their designation of the "craft" status of Veza Sur beers, Veza Sur's origin of Wynwood, Florida or Miami, Florida, and Veza Sur's Brazilian and Latin American roots.

187.     The Plaintiffs and members of the classes relied on the representations in deciding to purchase the beers or to pay a price premium for the purchases thereof.

188.     The Plaintiffs and the members of the classes have suffered damages as a direct and proximate result of these actions because they would not have purchased the beers if they had known the truth about the products or they would not have been willing to pay the inflated price.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs, individually and on behalf of the members of the classes, demand judgment as follows:

(a) Declaring to be a proper class action maintainable pursuant to Federal Rule of Civil Procedure 23 and declaring Plaintiffs and their counsel to be representatives of the Class.

(b) Enjoining Defendants from continuing in the acts and practices described above.

(c) Awarding all damages sustained by Plaintiffs and the Class as a result of the Defendant's conduct, together with pre-judgment interest.

(d) Finding that Defendants have been unjustly enriched and requiring it to refund all unjust benefits to Plaintiffs and the Class, together with pre-judgment interest.

(e) Awarding Plaintiffs and the Class damages, injunctive relief, declaratory relief, attorneys' fees, costs, and expenses.

(f) Awarding such further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs, individually and on behalf of the members of the classes, hereby demand a trial by jury of all issues so triable.

Dated:  August 14, 2020                    Respectfully submitted,

TWIG, TRADE, & TRIBUNAL, PLLC           TWIG, TRADE, & TRIBUNAL, PLLC
1512 E Broward Blvd, Suite 204A          1512 E Broward Blvd, Suite 204A
Fort Lauderdale, FL 33301                Fort Lauderdale, FL 33301
Telephone: (954)-472-5001                Telephone: (754)-900-8944
Facsimile: (888)-444-7087                Facsimile: (888)-444-7087
Service Email: service@twiglaw.com       Service Email: service@twiglaw.com

*/s/ Joshua H.  Lida*                    */s/ Terra L. Sickler*
JOSHUA H. LIDA, ESQ.                     TERRA L. SICKLER, ESQ.
Florida Bar No.: 117529                  Florida Bar No.: 94317
josh@twiglaw.com                         tsickler@twiglaw.com
*Attorney for Plaintiffs*                *Attorney for Plaintiffs*

TWIG, TRADE, & TRIBUNAL, PLLC
1512 E Broward Blvd, Suite 204A
Fort Lauderdale, FL 33301
Telephone: (954)540-2755
Facsimile: (888)-444-7087
Service Email: service@twiglaw.com

*/s/ Morgan L. Weinstein*
MORGAN L. WEINSTEIN, ESQ
Florida Bar No.: 87796
morgan@twiglaw.com
*Attorney for Plaintiffs*

KYNES, MARKMAN & FELMAN, P.A.
P.O. Box 3396
Tampa, FL 33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750

*/s/ Katherine Earle Yanes*
KATHERINE EARLE YANES, ESQ.
Florida Bar No.: 159727
kyanes@kmf-law.com
*Attorney for Plaintiffs*

KYNES, MARKMAN & FELMAN, P.A.
P.O. Box 3396
Tampa, FL 33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750

*/s/ Gus M. Centrone*
GUS M. CENTRONE, ESQ.
Florida Bar No.: 30151
gcentrone@kmf-law.com
*Attorney for Plaintiffs*