**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-23392-CIV-BLOOM**

BYRON JACKSON and MARIO MENA, JR.,

     Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC, and
MIAMI BEER VENTURES, LLC,

     Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants, Anheuser-Busch Companies, LLC ("A-B") and Miami Beer Ventures, LLC ("MBV") (collectively, "Defendants"), hereby move to dismiss Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 58, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for failure to state a claim and lack of standing.

## PRELIMINARY STATEMENT

In response to the Court's ruling granting Defendants' first motion to dismiss, Plaintiffs' SAC omits its predecessor's lengthy background allegations on the history of beer, three claims they had conceded should be dismissed, and a conspiracy count. The amended pleading does not, however, cure any of the substantive defects in their case. Plaintiffs assert two general theories of "deception" against Veza Sur beer: (1) that its marketing cannot rightfully refer to "craft," "Miami," or "Latin-American roots" because Veza Sur is affiliated with "macrobrewer" A-B; and (2) that its labels, packaging, and online marketing should not refer to Miami when some Veza Sur is also brewed in Fort Pierce, Florida. See SAC ¶ 1. Neither one has merit.

With respect to Plaintiffs' "craft" claim, a different plaintiff pursued the identical theory against MillerCoors and its Blue Moon brand, only to have his complaint dismissed twice. Parent v. MillerCoors, No. 15-1204, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015); Parent v. MillerCoors, No. 15-1204, 2016 WL 3348818 (S.D. Cal. June 16, 2016). The reasoning in that case is dispositive. A brand's mere affiliation with a large brewing company does not disqualify it from being marketed as "craft," "local," or with "roots" in a specific origin or style of beer. The Veza

Sur beer brand was inspired by Latin American beverages, began with a single brewpub in Miami, and continues to be sold in a very limited Florida market. Further, according to articles cited in Plaintiffs' own pleadings, A-B's backing of the Veza Sur brand has been public from its inception, to a far greater degree than in the Blue Moon case.

In their geography-related claims, Plaintiffs mischaracterize a hashtag about the brand itself while ignoring factual information disclosed on the bottle. In addition, Veza Sur's labels are consistent with federal alcohol regulations and were duly approved by the relevant authority. Thus, the allegations of "deception" driving the statutory, fraud, and all other claims in this lawsuit are groundless. Other defects, discussed further below, compound these global flaws, and Defendants respectfully request that this action be dismissed with prejudice.

## BACKGROUND

### I.   History of Veza Sur

Veza Sur is a small line of beers developed for the Miami market in consultation with experienced founders of other small breweries affiliated with A-B and drawing on Latin-American influences. See SAC ¶ 27. The Veza Sur brewpub opened in Miami in 2017. Id. ¶¶ 24, 35. In addition to an on-site brewery that visitors can tour, Veza Sur is a taproom that serves its beers on draft in multiple different Latin-inspired flavors and styles.[1]

Around 2019, some Veza Sur beers also began to be bottled and sold at retail locations in Florida. See id. ¶¶ 35, 64(j), 67(g). In addition to the Miami brewery, some Veza Sur packaged beer is brewed in Fort Pierce, Florida, as disclosed on the labels. Id. ¶ 51 & p. 12. The Fort Pierce facility is owned by Islamorada Brewing Company LLC, which is a Florida craft brewer. See id. ¶¶ 50, 56. No Veza Sur beer is brewed at a facility directly owned by A-B. Id. ¶¶ 50-51.

Veza Sur Brewing Co. is a trade name for the business operated by Defendant MBV, a Florida company, and is duly registered with the State of Florida for use by both MBV and Islamorada. Id. ¶¶ 5, 34, 47; Defs' Req. for Judicial Notice ("RJN"), Ex. 3-4, ECF Nos. 62-3, 62-4. Plaintiffs assert that A-B "own[s]" Veza Sur. SAC ¶ 26. While the theme of Plaintiffs' case is the notion that A-B's connection to Veza Sur is hidden, materials cited in their pleadings show

---

[1]  See vezasur.com/beers/ and vezasur.com/brewery/ (last visited Feb. 24, 2021). The website is cited throughout Plaintiffs' SAC, including ¶¶ 41-44, nn. 19-21. The Court may consider the website and other materials cited and incorporated in the SAC on a motion to dismiss. Sieger Suarez Architectural P'ship v. Arquitectonica Int'l, 998 F. Supp. 2d 1340, 1349 (S.D. Fla. 2014); Cacace v. Swacina, No. 07-20410, 2007 WL 9709744, at *1 n.1 (S.D. Fla. May 17, 2007).

that is false.  A-B's affiliation with Veza Sur has been open and public from the beginning of the brand, even as Veza Sur does not use any A-B-operated brewery to make its beers.

For example, on April 17, 2017, the <u>Miami New Times</u> published an article with a headline announcing, "Anheuser-Busch to Open Boutique Brewery in Wynwood."[2]  The article went on to state, "Anheuser-Busch InBev is adding another brand to its craft- and import-focused, 'high-end' portfolio with the launch of Veza Sur Brewing Co. this summer in Miami.  The beverage megacompany has tapped Colombia's Bogota Beer Company and Oregon's 10 Barrel Brewing for the collaboration." <u>Id.</u>  It further explained how the project leaders, including personnel "in charge of new ventures and innovation at Anheuser-Busch InBev," traveled to South America and used their personal experiences in developing Veza Sur.  <u>Id.</u>  Plaintiffs do not allege any of this story of Veza Sur is false.  Rather, they complain that Defendants allegedly provided it to media without re-posting it on the Veza Sur website.  SAC ¶¶ 27-28.

Likewise, the SAC cites an April 17, 2017, article from <u>www.brewbound.com</u> reporting, "Anheuser-Busch to Launch Latin-Themed Craft Brand in Miami."[3]  That article described a letter to wholesalers announcing that the company "would launch Veza Sur Brewing Co. in Miami this summer."  <u>Id.</u>  The SAC also acknowledges that the website for Veza Sur itself contains "Terms and Conditions" that identify A-B (but contends it should be more prominent).  SAC ¶ 38-39.  Plaintiffs do not (and could not truthfully) allege that Veza Sur is not disclosed as an A-B brand on A-B websites, because it is.

The "media" cited in the SAC is not random or obscure.  Rather, as purported craft beer fans living in Miami, it is exactly the type of information resources that Plaintiffs would presumably utilize.  Both Plaintiffs indicate that they learned about Veza Sur on "local and social media."  SAC ¶¶ 64(a), 67(a).  The <u>Miami New Times</u> is a local newspaper that exclusively serves the Miami area.  Brewbound.com is one of the preeminent online publications for the beer industry, particularly for craft beer.

## II.  Beer Regulations

The U.S. Treasury's Alcohol and Tobacco Tax & Trade Bureau ("TTB") is charged with

---

[2]   <u>See</u>   https://www.miaminewtimes.com/restaurants/anheuser-busch-opening-veza-sur-breweing-co-in-wynwood-9284101 (last visited Feb. 24, 2021), cited in SAC ¶ 27, n.16.

[3]   <u>See</u>   https://www.brewbound.com/news/anheuser-busch-launch-latin-themed-craft-brand-miami (last visited Feb. 24, 2021), cited in SAC ¶ 35, n.18.

creating and enforcing alcohol beverage regulations to prevent consumer deception. See 27 U.S.C. §§ 201-219. For domestic beers such as Veza Sur, TTB regulations require the label to include "the name of the bottler or packer and the place where bottled or packed." 27 C.F.R. § 7.25(a). "The bottler's or packer's principal place of business may be shown in lieu of the actual place where bottled or packed if the address shown is a location where bottling or packing operation takes place." Id. In addition, it is permissible to show the "name or trade name of the brewer" on the bottle and case. 27 C.F.R. §§ 25.142(a), 25.143(a). Thus, Veza Sur's identification of Miami and Veza Sur Brewing Co. is consistent with federal law. Further, as noted above, Veza Sur labels also disclose the other location of bottling – Fort Pierce. RJN at Ex. 2; SAC ¶ 51 & p. 12. Veza Sur is transparent in its labeling and packaging of its beers, and TTB regulations do not require MBV or Islamorada, let alone A-B, to be listed.

To prevent beer that violates labeling requirements from reaching consumers, federal law mandates that the bottler or packer apply for and obtain a "Certificate of Label Approval" ("COLA") prior to use of new labeling. 27 U.S.C. § 205(e); 27 C.F.R. § 7.41(a). The TTB grants approval only if it determines that the application "complies with applicable laws and regulations." 27 C.F.R. § 13.21(a). The Veza Sur Spanglish Latin Lager label depicted in the SAC at pages 10 and 12 was approved by the TTB through the COLA process. See RJN, Ex. 2, ECF No. 62-2.

### III.  "Craft" Beer

The TTB has not promulgated any regulations defining "craft" beer. Indeed, "craft" has no legal definition. Rather, the meaning of "craft" is amorphous, fluid, and involves a variety of different associations, such as quality, taste, "story," production method, and connection to a location or region. See, e.g., SAC ¶¶ 12, 14, 16; www.crresearch.com/blog/survey-reveals-factors-driving-craft-beer-growth, cited in SAC ¶ 15 n.6.

Unable to identify an objective definition of "craft," Plaintiffs instead urge the Court to take sides in marketplace competition and adopt the criteria for independent craft developed by the Brewers Association, a private trade organization that does not speak for regulators. See SAC ¶ 21. The Brewers Association, however, has a mission – to "support independent beer" – and that is reflected in its self-serving definition, which pointedly excludes craft beer produced by large competitors, like A-B, that have acquired or developed small breweries. See www.brewersassociation.org/independent-craft-brewer-seal/, cited in SAC ¶ 21 n.13. Indeed, by adding the qualifier "independent" to its criteria, the Brewers Association acknowledges that

"craft" beer can be made in "non-independent" breweries.  Notably, Plaintiffs do not allege that Veza Sur improperly used the Brewers Association logo for "independent" craft.  Indeed, A-B trumpets its ties to Veza Sur and is not alleged to have labeled or marketed it as "independent."

**IV.   Plaintiffs' Complaint**

Byron Jackson and Mario Mena, Jr. filed this putative class action claiming they were "deceived" into believing that Veza Sur is "authentic craft beer that was made by a locally owned small brewery in Miami," attributes they contend are negated by A-B's affiliation with Veza Sur and by the contract brewing arrangement with Islamorada to produce some Veza Sur beer in Fort Pierce, in addition to Miami.  SAC ¶ 1.  Plaintiffs allege that they purchased unidentified Veza Sur beers on draft at the brewpub and six-packs of the Spanglish, Mangolandia, and La Yuma varieties from unidentified retail locations in Florida.  Id. ¶¶ 64, 67.  They claim to have "relied on" Instagram posts, packaging, and labeling for Veza Sur, as well as unspecified "advertisements," "marketing," and oral communications.  Id.  Incongruously, neither plaintiff identifies vezasur.com as a basis for his claims, id., although the SAC makes general allegations regarding the Veza Sur website and includes viewing the website as a membership criterion for three of the four proposed classes (id. ¶¶ 41-44, 80).

The SAC asserts seven counts: (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) fraudulent misrepresentation; (3) unjust enrichment; (4) breach of express warranty; (5) breach of the federal Magnuson-Moss Warranty Act; (6) negligent misrepresentation; and (7) misleading advertising under Fla. Stat. § 817.41.  In addition to damages, Plaintiffs seek injunctive and declaratory relief.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  While well-pled factual allegations are accepted as true, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," are not.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In addition, allegations that sound in fraud, as Plaintiffs' misrepresentation claims do, must be pled with particularity under Fed. R. Civ. P. 9(b).  See, e.g., Perret v. Wyndham Vacation Resorts, 846 F. Supp. 2d 1327, 1332 (S.D. Fla. 2012).

At the hearing on Defendants' first motion to dismiss, the Court explained that these standards require Plaintiffs to identify "precisely what items the Plaintiffs claim to be deceived or

misled by." Ex. 1, 1/22/2021 Hr'g Tr., p. 5:18-19; see also id., pp. 12:12-25, 26:15 – 27:2.  General references to websites, packaging, oral discussions, and the brewery itself are insufficient.  Id., pp. 5:11 – 6:22.

## ARGUMENT

### I.     Plaintiffs Fail to Allege Any Actionable Deceptive Statement or Omission.

Three elements are required for a FDUTPA claim: (1) a deceptive act or unfair practice; (2) causation; and (3) damages.  Lombardo v. Johnson & Johnson Consumer Cos., 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015); Fla. Stat. § 501.211(2).  To be "deceptive," a representation or omission must be "likely to mislead" a reasonable consumer acting reasonably in the circumstances.  Zlotnick v. Premier Sales Grp., 480 F.3d 1281, 1284 (11th Cir. 2007).  The deception must be "probable, not possible."  Id.  When a court can determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer, dismissal is proper under Rule 12(b)(6).  Devane v. L'Oreal USA, Inc., No. 19-4362, 2020 WL 5518484, at *2 (S.D.N.Y. Sept. 14, 2020) (addressing FDUTPA and other claims).

As discussed further below, the "craft," "Miami," and "Latin-American roots" language Plaintiffs challenge regarding Veza Sur is not likely to mislead a reasonable consumer, and therefore is not actionable.  Alleged "omissions" about A-B's affiliation with Veza Sur also do not state a claim, as Plaintiffs identify no basis for a duty to provide such information, and the allegations of the SAC show the affiliation was openly and publicly disclosed.[4]  In addition, FDUTPA provides a safe harbor for actions that are "required or specifically permitted by federal or state law."  Fla. Stat. § 501.212(1).  The safe harbor independently bars Plaintiffs' claims premised on the federally-approved labels for Veza Sur.

#### A.  Plaintiffs' generalized allegations do not state a claim.

At the outset, although Plaintiffs have removed some extraneous allegations from the SAC in response to the Court's January 22, 2021, ruling, parts of their pleading continue to rely on generalized "misrepresentations" that do not satisfy the standards discussed above.  For example, Plaintiffs' allegations regarding their "experience with Veza Sur" assert that they "relied on" unspecified "misleading advertisements and signage," "misrepresentations and omissions," and

---

[4] Plaintiffs' other six causes of action also are premised on the same allegations as their FDUTPA claim; thus, Plaintiffs' failure to identify a deceptive statement or omission under FDUTPA also is fatal to their remaining claims.

"marketing and information provided to patrons … that Veza Sur was a local, Miami, craft brewery." SAC ¶ 64(f), (h), (i); ¶ 67(d), (f). They quote phrases such as "new local business" and "new Miami local craft brewery" without identifying any source or context. Id. ¶ 64(c), (g); ¶ 67(c), (e). Plaintiffs' general allegations also contend that "Defendants' website, the brewery itself, packaging, and labeling" are "false and misleading" and attempt to amalgamate them into a "false narrative." See, e.g., id. ¶¶ 62, 69, 70; see also id. ¶ 59.

These are precisely the type of generic allegations the Court rejected in granting Defendants' prior motion to dismiss. Ex. 1, 1/22/2021 Hr'g Tr., pp. 5:20 – 6:9 (discussing general allegations regarding the "website" and "brewery"). Indeed, Plaintiffs' allegations regarding oral conversations with unidentified "staff of Veza Sur about the creators being of and from Miami, and the brief history about the Veza Sur brand" remain identical to those the Court rejected in the prior complaint, despite the Court's express direction that Plaintiffs must identify specific, actual representations made and other details required by Rule 9(b). Id., p. 12:12-17; compare First Amended Complaint, ECF No. 17, at ¶¶ 91-92, with SAC ¶¶ 64(d), 67(d). Plaintiffs' vague allegations such as these cannot state a claim and should be disregarded.

Stripped of generalizations and focusing on the paragraphs Plaintiffs identify as the "outline" of the "misrepresentations and omissions that the Plaintiffs relied on" (SAC ¶ 101), Plaintiffs purport to challenge: (1) use of the phrase "Miami-born craft brewery with Latin-American roots" on Veza Sur's Instagram profile[5] (¶¶ 57, 64(e)); (2) alleged non-disclosure of Veza Sur's affiliation with A-B (¶ 61); and (3) use of the hashtag "#HechaEnMiami," the disclosure "BREWED & BOTTLED BY VEZA SUR BREWING CO. IN MIAMI & FORT PIERCE, FL," and alleged omissions on Veza Sur labels (¶¶ 51-56, 61, 64(k)).[6] None of these theories states a claim, as discussed next in Parts I.B through I.D.

---

[5] In their general allegations, Plaintiffs complain about similar language on the Veza Sur website (SAC ¶¶ 40-44). However, they do not include those allegations in their claim-specific list of "misrepresentations and omissions" that they allegedly "relied on" (see id. ¶¶ 101, 111, 116, 127, 136, 142, 149), or in the paragraphs setting forth their "experience with Veza Sur" (id. ¶¶ 64, 67). Even if Plaintiffs had properly placed the Veza Sur website at issue, they could not state a claim for the same reasons the Instagram profile is not actionable.

[6] In their general allegations, Plaintiffs make additional complaints about the external packaging (SAC ¶¶ 45-49), but, once again, Plaintiffs do not cite those allegations in their claim-specific list of "misrepresentations and omissions" that they allegedly "relied on" (see id. ¶¶ 101, 111, 116, 127, 136, 142, 149).

**B.  Veza Sur's use of "craft" is not deceptive as a matter of law.**

Plaintiffs allege that Veza Sur beers cannot rightfully use the term "craft" when the brand is affiliated with A-B.  Their theory is indistinguishable from claims that have been addressed and rejected before in litigation involving Blue Moon beer, which is a product of brewing giant MillerCoors.  The same result should obtain here.

First, Plaintiffs' theory is not based on any objective legal definition for "craft" beer.  There is none.  Rather, the SAC and the materials cited and incorporated therein recognize "craft" can have a variety of associations, ranging from taste and quality, to limited production and geographic footprint, to having a "story."  See p. 4 above.  Words with fluid, subjective meaning are "puffery" and not actionable.  Aprigliano v. Am. Honda Motor Co., 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) (adjectives that "cannot be quantified" or are "subjective to each individual" are puffery); Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1028 (11th Cir. 2003) (language that cannot be "affirmatively disproven" is puffery); Arcure v. Kellogg Co., No. 10-0192, 2011 WL 13294631, at *6 (M.D. Fla. Mar. 29, 2011) ("general, non-specific, and subjective" statements including about "quality of its ingredients" were non-actionable puffery).

The only definition of craft proffered by Plaintiffs is the criteria for independent craft brewer pushed by the Brewers Association.  SAC ¶ 21 n.13.  A marketing strategy adopted by one segment of an industry does not provide an objective, legal standard for determining whether a competitor's activities are "deceptive."  Moreover, Plaintiffs do not and could not allege that Veza Sur is labeled or marketed as independent craft beer.  The Brewers Association developed a logo to identify "independent craft" beers, and Veza Sur does not use it.  Other public materials cited by Plaintiffs themselves in this case make clear that Veza Sur is affiliated with A-B.  See p. 3 above.  Moreover, Plaintiffs allege that Defendants are the source and promoter of those disclosures.  SAC ¶ 27.  Plaintiffs do not allege that A-B's websites fail to identify Veza Sur as an A-B brand, because they do.  Thus, even if the Brewers Association's unilaterally-created definition for "independent craft" was relevant – which it is not – deception could not be possible, much less probable, because A-B's affiliation with the brand is public information, and Veza Sur does not use the Brewers Association "independent" logo.  Plaintiffs also allege no facts that would suggest that Veza Sur beers are not "craft" in the sense of smaller production volumes, flavor profiles, or otherwise.  Indeed, the Brewers Association's insistence that "independent" be used as a qualifier for its seal is an acknowledgement that beers associated with larger breweries can be

"craft."

In <u>Parent</u>, the plaintiff also cited the Brewers Association "independent craft" criteria and claimed that MillerCoors "created the deceptive and misleading impression that Blue Moon is a 'craft beer'" by using the phrase "artfully crafted" on the packaging and by referring to it as "craft" online, among other allegations. <u>Parent v. MillerCoors LLC</u>, 2015 WL 6455752, at *1 (S.D. Cal. Oct. 26, 2015). In granting MillerCoors's first motion to dismiss, the court concluded that no reasonable consumer could be misled into believing that Blue Moon was an "independently brewed, hand-crafted beer" when MillerCoors's ownership was publicly disclosed online, including on MillerCoors's website – even though MillerCoors was not identified on the Blue Moon labels, packaging, or brand-specific website. <u>Id.</u> at *8. The court also concluded the phrase "artfully crafted" was not a statement of objective fact, and the use of the Blue Moon Brewing Co. trade name was legally permitted even though the beer was actually brewed at the same large facilities that brewed all of MillerCoors's other beers. <u>Id.</u> at *7, 9-10.

The court granted the plaintiff an opportunity to amend and, in addressing the revised pleading, concluded these defects could not be cured. The plaintiff attempted to bolster his case by alleging that the person credited with inventing Blue Moon was actually a MillerCoors employee and by identifying additional advertisements that allegedly contributed to a "fiction that Blue Moon is a craft beer produced by a small, independent brewery." <u>Parent v. MillerCoors LLC</u>, 2016 WL 3348818, at *3 (S.D. Cal. June 16, 2016). The court held that the advertisements did not contain any affirmative misrepresentation but, rather, were puffery. <u>Id.</u> at *5. While one ad contained imagery of a Blue Moon brewery with small tanks, it did not go so far as to state this was the only place Blue Moon beer is produced. <u>Id.</u> at *6. The depiction of the brewmaster who created Blue Moon was true, regardless of whether it identified his employer, and did not state that Blue Moon originated from an "independent" brewery. <u>Id.</u> Thus, the court dismissed the claims with prejudice.

Plaintiffs' allegations in support of their claim that Veza Sur misrepresents itself as "craft" beer are even weaker than the allegations that failed in the Blue Moon case. For Veza Sur, Plaintiffs do not allege that the beers are labeled as craft, but just that its Instagram page and website include the word. Plaintiffs complain that A-B is not named on the Veza Sur homepage or labels – but they ignore A-B's own website and cite other public materials that prominently identify Veza Sur as an A-B brand and thus foreclose any claim of deception, even more clearly

than public information identifying Blue Moon as a MillerCoors brand in <u>Parent</u>.  <u>See</u> pp. 2-3 above.  Plaintiffs allege the use of a trade name and imagery of brewery operations and personnel (SAC ¶¶ 43, 47), which do not constitute an affirmative misrepresentation that beer is produced "independently" for all the reasons explained in <u>Parent</u>.  <u>See also</u> Part I.E below (discussing safe harbor for use of trade name).  Further, Blue Moon was brewed at the same facilities as MillerCoors's large brands, and the court still held the plaintiffs could not state a claim based on the theory that it was deceptively marketed as "craft" beer.  Veza Sur, in contrast, is brewed at just two small locations in Florida – the original Veza Sur brewpub in Miami and the Islamorada craft brewery nearby.  <u>See</u> SAC ¶¶ 35, 50, 92.

Finally, referring to Veza Sur as "craft" beer is true.  While Plaintiffs improperly and narrowly attempt to make "craft" synonymous with "independent," Veza Sur has many of the attributes allegedly associated with craft beer based on the facts alleged in the SAC or public sources incorporated therein.  The Veza Sur brand began with a single location in Miami that locals patronize, has a brewery on site, offers a variety of unique flavors of beer inspired by expert brewers' travels and Latin culture, and is available only in a limited Florida market.  <u>See</u> pp. 2-3 above; SAC ¶¶ 12 (craft beer "tells a story"), 14 (quality and small geographic footprint for production), 16 ("local beer" is beer "sold in [the drinker's] region or town or city"); www.crresearch.com/blog/survey-reveals-factors-driving-craft-beer-growth ("taste and quality were by far the biggest factors" in craft beer, according to survey cited by Plaintiffs), cited in SAC ¶ 15 n.6.  While Plaintiffs aver in general that A-B is a "macrobrewer," they do not claim that Veza Sur is produced at any of A-B's large breweries; on the contrary, they allege that it is brewed in Miami and one other location in Florida.  They do not allege that A-B is actively involved in Veza Sur brewing, just that it is in a chain of corporate ownership.  Plaintiffs have identified no legal basis for their extreme position that this single factor disqualifies Veza Sur as "craft" to a reasonable consumer, and their allegations thus fail as a matter of law.

**C.  Plaintiffs cannot state a claim based on alleged omission of the A-B affiliation.**

Plaintiff's allegation that Defendants engaged in deception by not marketing Veza Sur as "owned" by A-B is a corollary of their craft beer theory and fails for similar reasons.

At the outset, A-B's affiliation with Veza Sur is publicly disclosed as reflected in the very materials cited in the SAC and discussed above (p. 3), as well as on A-B's website.  As "those very things that Plaintiffs complain were deceiving" have been disclosed, no FDUTPA claim lies.

Parziale v. HP, 445 F. Supp. 3d 435, 444-45 (N.D. Cal. 2020) (quoting Beale v. Biomet, 492 F. Supp. 2d 1360, 1374 (S.D. Fla. 2007)).  To the extent Plaintiffs contend additional disclosures were required, they identify no duty to support their omission theory.  See, e.g., Parziale, 445 F. Supp. 3d at 445; cf. White v. Grant Mason Holdings, Inc., 741 F. App'x 631, 637 & n.1 (11th Cir. 2018) (holding omission when one is under a duty to speak can be a deceptive act and suggesting "Florida's general law on the duty to disclose" does not differ "in the FDUTPA context").  Plaintiffs do not identify any legal basis for requiring disclosure of the chain of corporate ownership of a brand on the label, internet posts, or otherwise.  TTB regulations do not require it and, on the contrary, expressly permit the use of trade names.  27 C.F.R. § 25.142(a); see also Cruz v. Anheuser-Busch, No. 14-9670, 2015 WL 3561536, at *9 (C.D. Cal. June 3, 2015) (considering scope of disclosures required by TTB and finding, "[w]ithout a statutory mandate, A-B cannot be held liable [for fraudulent omission] if it were not required to disclose its ingredients"), aff'd, 682 F. App'x 583 (9th Cir. 2017).

Further, the rationale in Parent is dispositive of Plaintiffs' allegations that Defendants deceptively omitted A-B's affiliation with Veza Sur.  As referenced above, the Parent decisions concluded that the plaintiff could not state a claim based on omission of MillerCoors's ownership of Blue Moon on the beer labels and the Blue Moon website, when the beer was not represented to be "independent" and MillerCoors's ownership was publicly disclosed on MillerCoors's website.  Likewise here, Plaintiffs have not identified any representation that Veza Sur is an "independent" brewery, and its affiliation with A-B has been disclosed to an even greater degree than the disclosures in Parent, on A-B's website and others.

**D.  "#HechaEnMiami," "Miami-born," and "Latin roots" are not actionable.**

Plaintiffs also complain that the labeling and marketing of Veza Sur are deceptive with respect to where and by whom the beer is brewed.  SAC ¶¶ 48, 50-57, 61.  This theory, too, is baseless because the alleged misrepresentations are true and puffery.

First, Plaintiffs translate "#HechaEnMiami" as "Made in Miami" (not brewed in Miami, or produced in Miami, and certainly not brewed or produced exclusively in Miami), and contend it is inaccurate because some Veza Sur beer is brewed and bottled at another craft brewing facility in Fort Pierce, Florida (about 130 miles away from Miami).  SAC ¶¶ 48, 51.  However, #HechaEnMiami refers to the Veza Sur brand and is not a representation about where individual beers were produced.  The brewing location is disclosed in a separate section of the label, which,

in Plaintiffs' cited example, identifies the beer as "BREWED & BOTTLED BY VEZA SUR BREWING CO. IN MIAMI & FORT PIERCE, FL." SAC p. 12. As Plaintiffs allege, "#HechaEnMiami" appears in a separate location alongside the Veza Sur brand name on "all" bottles. SAC ¶ 48. Veza Sur as a brand is made in Miami. The physical brewpub that started Veza Sur and remains at its heart is in Miami. It is the first place where Veza Sur beer was brewed, and beer is still brewed there today. See SAC ¶¶ 24, 27, 35, 44; Parent, 2016 WL 3348818, at *6 (agreeing that "The Story of Blue Moon" video on website was not actionable because some Blue Moon was "first produced" at "the 'SandLot' brewery" and the video did not represent "that Blue Moon is currently produced only out of the SandLot brewery"). Plaintiffs do not identify any representation that Veza Sur beer is brewed exclusively in Miami. Thus, "#HechaEnMiami" is true and not deceptive.

The challenged reference to "Miami-born" on Veza Sur's Instagram page is not actionable for similar reasons. "Born" cannot reasonably be equated with "exclusively brewed." Further, Veza Sur did start in Miami. The first and only Veza Sur brewpub is in Miami. See SAC ¶¶ 24, 27, 35, 44. It has a brewery on site. See www.vezasur.com/brewery/, cited in SAC ¶ 42, n.19. The primary market for Veza Sur is Miami, and it is sold only in Florida. See SAC ¶¶ 35, 92. Veza Sur may be backed by A-B, but it was developed for and is local to Miami.

As with the "craft" beer terminology, decisions addressing prior complaints involving geographic references in beer labels and marketing are instructive. They demonstrate that references to a brand's historical or cultural origins cannot reasonably be construed as a factual representation that all the beer is produced there. For example, in Dumas v. Diageo PLC, No. 15-1681, 2016 WL 1367511, at *1 (S.D. Cal. Apr. 6, 2016), the court dismissed consumer protection and misrepresentation claims based on allegations that the language "Jamaican Style Lager" and "The Taste of Jamaica" on Red Stripe beer led consumers to believe it was made in Jamaica, when the beer actually is brewed in the U.S. and the label stated so. In a pair of decisions involving Foster's and Sapporo beers, another court rejected claims based on the argument that imagery and references to Australia and Japan (respectively) on their labels were misleading, when those contents were "eclipsed by the accurate disclosure statement" that the beers were actually brewed elsewhere. Nelson v. MillerCoors, 246 F. Supp. 3d 666, 676 (E.D.N.Y. 2017) (dismissing claims challenging "Foster's Australian for Beer" slogan); Bowring v. Sapporo U.S.A., 234 F. Supp. 3d 386, 391-92 (E.D.N.Y. 2017) (dismissing claims challenging slogans including "The Original

Japanese Beer" and "Japan's Oldest Brand").

Plaintiffs' claim concerning the brewing location for Veza Sur is far weaker than the claims the courts rejected in these cases. They do not complain that the beer is made in an entirely different country than referenced on the packaging. Rather, they assert that some of the beer is made around 130 miles away from the original Miami brewery for Veza Sur. SAC ¶ 51. The Fort Pierce location, however, is plainly disclosed on the Spanglish label reproduced in the SAC, which states: "BREWED & BOTTLED BY VEZA SUR BREWING CO. IN MIAMI AND FORT PIERCE, FL." Id. ¶¶ 51, 54. Plaintiffs complain that the disclosure appears on the label rather than the exterior packaging, but the example they depict of the allegedly conflicting hashtag also is from the label. SAC ¶ 51 & p. 10. Moreover, to the extent Plaintiffs are not first-time purchasers of Veza Sur, but repeat monthly buyers, they have removed bottles from the package multiple times and cannot disclaim the label information.[7]

Further, "#HechaEnMiami" is a hashtag, not an affirmative statement of objective fact. A hashtag is "a form of metadata comprised of a word or phrase prefixed with the symbol '#'" used to direct viewers to marketing campaigns or other topical materials. Eksouzian v. Albanese, No. 13-0728, 2015 WL 4720478, at *8 (C.D. Cal. Aug. 7, 2015). The hash symbol and words are not factual statements but, rather, "merely facilitate categorization and searching within online social media." Id.; see also Juul Labs v. 4X Pods, Eonsmoke, No. 18-15444, 2021 WL 62316, at *2 (D.N.J. Jan. 7, 2021). In portraying the hashtag as a factual representation that specific beer was brewed exclusively in Miami (see SAC ¶ 48), Plaintiffs grossly distort the purpose and normal use

---

[7] All these circumstances distinguish Plaintiffs' claims regarding Veza Sur from the labeling claims that survived motions to dismiss in Marty v. Anheuser-Busch Cos., 43 F. Supp. 3d 1333 (S.D. Fla. 2014), and Broomfield v. Craft Brew Alliance, No. 17-1027, 2017 WL 3838453 (N.D. Cal. Sep. 1, 2017). In Marty, the plaintiff complained that Beck's beer was labeled as "Originated in Germany" with "German Quality" while "Brewed Under the German Purity Law" but actually was produced only in the U.S. The court concluded those phrases were factual and not overcome by a "Product of USA" disclaimer [that was] blocked by the carton" and that the court found "difficult to read." 43 F. Supp. 3d at 1342. In Broomfield, the plaintiff complained that all Kona packaged beer was brewed on the mainland, while its packaging referenced Hawaii. The court's denial of the motion to dismiss relied on the Hawaiian address and map of Hawaii marking the Kona brewery on the top of the packaging, which have no analog in this case. The court noted that Hawaiian imagery and the phrase "Liquid Aloha" would be puffery and not sufficient to deceive, and explained that "merely referencing Hawaii and its culture on the packaging is not enough on its own to confuse a reasonable consumer regarding the origin of the beer." 2017 WL 3838453, at *6.

of what is commonly understood to be an indexing and tracking tool for social media content. Notably, while Plaintiffs' complaint about the hashtag is limited to the label and "package" (SAC ¶¶ 51, 64(k) & p.10), Veza Sur's Instagram page incorporated in the SAC (id. ¶ 57) uses "#HechaEnMiami" in its profile and to tag posts. As noted, it is a reference to the brand, not a statement of production location for individual bottles of beer.

Finally, any claim premised on online references to Veza Sur's "Latin American roots" also should be dismissed. "Roots" and tradition are not objectively measurable but, rather, refer to the inspiration and style of the beer. Plaintiffs do not allege that the beers embody some style other than Latin. Notably, they do not complain about "Latin Lager" language on the Spanglish beer depicted in the SAC. See SAC pp. 9-10. Again, Dumas is instructive. There, the court addressed the phrase "Taste of Jamaica" and the statement that "Red Stripe has embodied the spirit, rhythm and pulse of Jamaica and its people" and concluded this was "a vague, colorful expression of [its] association with Jamaica and cannot reasonably be construed as a designation of origin." 2016 WL 1367511, at *5. The same rationale applies to Veza Sur, where "Latin American" refers to the beers' spirit and style and is not a deceptive statement of origin.

### E. The FDUTPA safe harbor bars Count I to the extent it is premised on Veza Sur labels.

Under the FDUTPA safe harbor, Fla. Stat. § 501.212(1), there is no liability for an act or practice that is "specifically permitted under federal law." Phelps v. Hormel Food Corp., 244 F. Supp. 3d 1312, 1319 (S.D. Fla. 2017). Here, federal regulations permit elements of the Veza Sur label that Plaintiffs challenge. See SAC ¶¶ 51, 52, 56, 61. In addition, the TTB approved the label depicted in the SAC. Thus, the safe harbor bars any label-based theory.

First, listing Veza Sur Brewing Co. – rather than A-B, MBV, or Islamorada – is expressly permitted under TTB regulations allowing a beer bottle label to show "the name or trade name of the brewer." 27 C.F.R. § 25.142(a) (emphasis added). The SAC admits that Veza Sur Brewing Co. is a lawful trade name registered with the State of Florida by both MBV and Islamorada. SAC ¶ 47; see also RJN, Ex. 3-4. The safe harbor thus bars Plaintiffs' claim that use of the trade name, and "omission" of other entities, was deceptive. See Parent, 2015 WL 6455752, at *6 ("[T]he safe harbor doctrine applies to the extent that Plaintiff's [consumer protection] claims rely on MillerCoors' omission of their ownership interest, or their designation of BCBM as the brewer, on the label or packaging of Blue Moon beers.").

14

Second, TTB regulations require beer bottle labels to identify the "place of production," which Veza Sur's labels do.  27 C.F.R. § 25.142.  The regulations also permit a domestic brewer to identify the bottler's or packer's principal place of business in lieu of the actual place where the beer is bottled or packed if the address shown is a location where bottling or packing operation takes place.  27 C.F.R. § 7.25(a).  Plaintiffs do not and could not allege Veza Sur lacks such operations in Miami; they have seen the brewery for themselves.  See SAC ¶¶ 64, 67.  Thus, the dual-location disclosure cited by Plaintiffs, "BREWED AND BOTTLED BY VEZA SUR BREWING CO. IN MIAMI AND FORT PIERCE, FL," is also permitted by law.

In addition, product labels approved by a federal regulatory agency are specifically permitted under federal law.  Phelps, 244 F. Supp. 3d at 1319 (holding FDUTPA safe harbor barred claims challenging approved food labels); see also Kuenzig v. Hormel Foods Corp., 505 F. App'x 937, 939 (11th Cir. 2013); Prohias v. AstraZeneca Pharmaceuticals, L.P., 958 So.2d 1054, 1056 (Fla. 3d DCA 2007).  The Spanglish label – with the #HechaEnMiami hashtag and the "brewed and bottled" statement identifying Veza Sur Brewing Co. (not Islamorada, MBV, or A-B) and locations in Miami and Fort Pierce – depicted and challenged in the SAC on pages 10 and 12 received a valid Certificate of Label Approval (COLA) from the TTB.  RJN, Ex. 2.  Thus, it is specifically permitted under federal law and squarely within the FDUTPA safe harbor.  See Pye v. Fifth Generation, Inc., No. 14-0493, 2015 WL 5634600, at *4 (N.D. Fla. Sept. 23, 2015) (dismissing FDUTPA claim under safe harbor when defendant had a valid COLA for label describing vodka as "handmade" in "an old fashioned pot still," even where plaintiffs alleged the statements were patently false); Cruz, 2015 WL 3561536, at *1, 4-6 (explaining "TTB has exclusive jurisdiction in regulating the labels on alcoholic beverages," COLAs for the products "demonstrate [their] compliance with TTB regulations," and when "Plaintiffs' causes of action conflict with the TTB's approval of the Rita Products' labels, the safe harbor doctrine insulates A-B from liability").[8]

---

[8] While the court in Marty held the safe harbor did not bar claims involving Beck's beer, the facts are again distinguishable.  In Marty, the claims were "not based on the labels approved by the TTB" but, instead, were based on the "cartons."  43 F. Supp. 3d at 1345.  Plaintiffs' SAC makes clear that they are expressly and directly challenging Veza Sur labels as part of their claims in this case.  SAC ¶¶ 51-52, 56 and photos on pp. 10 & 12.  The court in Marty also cited a difference in the legibility of the Beck's label between the COLA and the actual bottle, which is not an issue here.  43 F. Supp. 3d at 1345 n.8.

II.     **Plaintiffs Do Not State a Claim for Fraudulent Misrepresentation or Misleading Advertising and Fail to Satisfy Rule 9(b).**

The elements of fraudulent misrepresentation (Count II) include: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation."  Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (emphasis in original).  "Misleading advertising" under Fla. Stat. § 817.41 (Plaintiffs' seventh count, misnumbered as IX in the SAC) has the same elements as common law fraud, including a "misrepresentation of material fact," as well as reliance on the alleged misleading advertising. Koens v. Royal Caribbean Cruises, Ltd., 774 F. Supp. 2d 1215, 1220 & n.7 (S.D. Fla. 2011).

These fraud claims fail at the first step for the same reasons discussed in Part I above. Plaintiffs cannot show that any challenged language on Veza Sur labels, packaging, or internet posts is untrue.  Likewise, to the extent Plaintiffs rely on a theory of omission, e.g., SAC ¶ 111, it fails as a matter of law.  The affiliation between A-B and Veza Sur is disclosed, and Plaintiffs have not alleged any duty to do even that, or more.  Pritchard v. Levin, 305 So. 3d 628, 630 (Fla. 3d DCA 2020); Behrman v. Allstate, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) ("[O]missions are not actionable … unless the party omitting the information owes a duty of disclosure."), aff'd, 178 F. App'x 862 (11th Cir. 2006).  This "duty arises when one party has information that the other party has a right to know because of a … relation of trust or confidence."  Behrman, 388 F. Supp. 2d at 1351.  There is no such duty, as here, in an "arms-length transaction" or where plaintiffs could have discovered the information through their "own diligence."  Id.

Plaintiffs also have not pled these claims with the specificity required by Rule 9(b). Instead, they offer only rote recitations of the intent and knowledge elements, alleging in conclusory fashion, for example, that A-B and MBV "knew that the subject representations were false" and the "representations were made for the purpose of inducing the Plaintiffs … to purchase the beers and/or to pay a premium price for the beers."  SAC ¶¶ 112, 113, 147.  These barebones allegations do not satisfy Rule 9(b).  See Adler v. WestJet Airlines, 31 F. Supp. 3d 1381, 1387 (S.D. Fla. 2014) (plaintiffs' assertion that defendant "knew or should have known" its representation "'was false' is too conclusory to supply the necessary allegations of intent").

III.    **Plaintiffs' Negligent Misrepresentation Claim Also Fails.**

Plaintiffs' sixth count for negligent misrepresentation (misnumbered Count VII in the SAC) requires a false statement of material fact, negligence in making the statement, intent that

others rely on it, plaintiff's justifiable reliance, and resulting damage.  Jaffe v. Bank of Am., 667 F. Supp. 2d 1299, 1319-20 (S.D. Fla. 2009).  As with fraud claims, omissions "are not actionable" as "negligent misrepresentation" in Florida absent a duty to disclose.  Behrman, 388 F. Supp. 2d at 1351.  Plaintiffs have identified neither a duty to disclose nor a duty of care.  Further, for all the reasons discussed above in Part I, Plaintiffs also cannot demonstrate any false statement in challenged language on the Veza Sur internet posts, packaging, or labels or that they justifiably relied on it in forming the alleged belief that Veza Sur is "a local, Miami, craft brewery with Brazilian and Latin American roots."  SAC ¶ 145.  Finally, the conclusory allegations about Defendants' state of mind again fall far short of the Rule 9(b) standard.  See Lamm v. State St. Bank & Trust, 749 F.3d 938, 951 (11th Cir. 2014).

## IV.     Plaintiffs Have Not Stated a Claim for Breach of Express Warranty.

Under Florida's UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Fla. Stat. § 672.313(1)(a).

First, Plaintiffs' express warranty claim in Count IV fails to comply with the Court's instructions to identify "precisely what warranties … were given to the Plaintiffs."  Ex. 1, 1/22/2021 Hr'g Tr., p. 26:24-25; see also Yost v. Stryker, No. 09-0028, 2010 WL 1141586, at *4 (M.D. Fla. Mar. 23, 2010).  Count IV does not recite the alleged warranties but, instead, refers to SAC paragraphs 50-65 as the "outline" of the express warranty.  SAC ¶ 127.  The vast majority of those allegations pertain to alleged omissions, which cannot be the basis of an express warranty claim as they obviously do not constitute an "affirmation of fact or promise."

Second, the only words attributed to Defendants in the paragraphs incorporated into Count IV are the Instagram profile referring to "Miami-born craft brewery with Latin-American roots" and "#HechaEnMiami."  SAC ¶¶ 57, 64(k), 127.  This language is not "an affirmation of fact or promise" for the same reasons discussed in Parts I.B and I.D.  See also Aprigliano, 979 F. Supp. 2d at 1341 (puffery cannot form the basis of an express warranty).  Moreover, as the words are true, there is no breach.

Third, "[t]he requirement that a statement be part of the basis of the bargain is essentially a reliance requirement."  Wyse v. Gerard Roof Prods., No. 19-0121, 2020 WL 1318348, at *2 (N.D. Fla. Mar. 2, 2020).  Plaintiffs fail to allege justifiable reliance on any "affirmation of fact or promise" – nor could they.  See, e.g., In re 100% Grated Parmesan Cheese Mktg. & Sales Practices

Litig., 393 F. Supp. 3d 745, 760-61 (N.D. Ill. 2019) (agreeing that "plaintiff can bring a Florida express warranty claim only if she relied on the warranty"); Hobco v. Tallahassee Assocs., 807 F.2d 1529, 1533 (11th Cir. 1987).  As Plaintiffs concede, the Veza Sur labels expressly state where the beer is brewed and bottled, id. ¶¶ 51, 54, and A-B's affiliation with Veza Sur was fully disclosed, id. ¶ 27, n.16; ¶ 35, n.18; and p. 3 above.

Fourth, under Florida law, a plaintiff may only bring a breach of express warranty claim if they stand in privity of contract with the defendant – including when the defendant is a manufacturer.  See T.W.M. v. Am. Med. Sys., 886 F. Supp. 842, 844 (N.D. Fla. 1995); Witt v. Howmedica Osteonics, No. 13-20742, 2013 WL 6858395, at *3 (S.D. Fla. Dec. 30, 2013) ("[P]rivity is required for both implied and express warranty claims."); Weiss v. Johansen, 898 So. 2d 1009, 1012 (Fla. 4th DCA 2005).  "Consistent with the overwhelming weight of Florida law," to establish contractual privity, "plaintiffs must purchase the product … directly from the defendant," Padilla v. Porsche Cars N. Am., 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019), or otherwise point to "substantial direct contacts … between the consumer and the manufacturer," Douse v. Bos. Sci., 314 F. Supp. 3d 1251, 1261-62 (M.D. Fla. 2018).  Alleged "contact" via "untargeted marketing," such as a product "website and advertisements" are insufficient to satisfy the requirement of privity.  Id.  Thus, to the extent Plaintiffs purport to assert claims involving packaged Veza Sur purchased from third-party retail outlets other than the Veza Sur brewery, privity is lacking.  See SAC ¶¶ 64(j), 67(g).  Further, there is no allegation whatsoever that any plaintiff purchased any Veza Sur product from A-B directly.

**V.     The Magnuson-Moss Warranty Act Count Is Barred.**

At the outset, Plaintiffs' fifth claim (misnumbered Count VI in the SAC) under the MMWA should be dismissed because the statute's jurisdictional numerosity requirement is not met.  Under § 2310(d)(3)(C), "[n]o claim shall be cognizable" in a suit brought in federal district court "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." Although courts have reached different conclusions about the interaction between the Class Action Fairness Act and the MMWA, the better view is that expressed in the most recent federal appellate decision on the issue, where the Ninth Circuit explained, "CAFA may not be used to evade or override the MMWA's specific numerosity requirement."  Floyd v. Am. Honda Motor, 966 F.3d 1027, 1035 (9th Cir. 2020).  Only two plaintiffs are named in this case; therefore, their MMWA claim should be dismissed for lack of jurisdiction.

Separate and apart from this threshold jurisdictional defect, Plaintiffs' MMWA claim is not free-standing but, rather, is predicated on the same flawed warranty theory discussed above and fails for the same reasons. See, e.g., Karhu v. Vital Pharm., No. 13-60768, 2014 WL 815253, at *7 (S.D. Fla. Mar. 3, 2014), aff'd, 621 F. App'x 945 (11th Cir. 2015) ("the MMWA does not define a stand-alone federal cause of action" but, instead, "borrows state law causes of action" for breach of warranty); Hill v. Hoover, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012).

Plaintiffs' MMWA claim also fails because they have not alleged the requisite "written warranty" that the Veza Sur products are "defect free or will meet a specified level of performance over a specified period of time." See 15 U.S.C. § 2301(6)(A) (defining "written warranty"). Plaintiffs' allegations regarding the tagline on Veza Sur's Instagram profile and a hashtag, SAC ¶¶ 136, 57, 64(k), are insufficient as a matter of law. See, e.g., Schechner v. Whirlpool, 237 F. Supp. 3d 601, 615 (E.D. Mich. 2017) (concluding under analogous state statute that "a mere 'product description' … does not affirmatively promise defect-free performance and it therefore falls outside MMWA's definition").

## VI. Plaintiffs' Unjust Enrichment Claim Fails.

In Count III, Plaintiffs allege that MBV and A-B were unjustly enriched when Plaintiffs paid a supposed "premium price" for the Veza Sur products. SAC ¶¶ 118, 121. Under Florida law, a plaintiff "cannot maintain a claim for unjust enrichment if there is an express warranty governing the plaintiff's rights." Toca v. Tutco, LLC, 430 F. Supp. 3d 1313, 1327 (S.D. Fla. 2020). The viability of the warranty claim is irrelevant. Id. Further, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal." Koski v. Carrier Corp., 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017). Here, because Plaintiffs' unjust enrichment allegations are duplicative of their legal claims and premised on the exact same theory as their express warranty claim, Count III fails as a matter of law despite Plaintiffs' formal allegation that it is "pled in the alternative" (SAC ¶ 117).

Plaintiffs' claim also fails on the merits. "The basis of the remedy of unjust enrichment is to provide restitution where one person has been unjustly enriched at the expense of another." Duty Free World v. Miami Perfume Junction, 253 So. 3d 689, 693 (Fla. 3d DCA 2018). Plaintiffs allege that they purchased and received a Veza Sur product, and "there is nothing inequitable about these circumstances." Toca, 430 F. Supp. 3d at 1328; see also Davis v. Fresh Market, Inc., No. 19-

24245, 2020 WL 3489369, at *4 (S.D. Fla. June 26, 2020) (no "inequitable circumstances" for unjust enrichment when related FDUTPA claim fails).

## VII.   Plaintiffs Lack Standing to Pursue Injunctive Relief.

To satisfy the Article III standing requirement, a plaintiff pursuing injunctive relief must seek to redress a real and immediate threat of future injury; past harm and speculation that harm could occur in the future will not suffice.  Ohio State Troopers Ass'n v. Point Blank Enters., 347 F. Supp. 3d 1207, 1228 (S.D. Fla. 2018) (citing cases); see also Salcedo v. Hanna, 936 F.3d 1162, 1167 (11th Cir. 2019) (a "concrete injury" cannot be "hypothetical or speculative").

Although Plaintiffs seek injunctive relief as to their FDUTPA claim (Count I), the injury they allege is both hypothetical and speculative.  Each plaintiff identically asserts that he "would resume visiting the brewery and resume purchasing Veza Sur in the future if he learns that it is accurately labeled."  SAC ¶¶ 65, 67(i) (emphasis added).  Changing "might" (from their prior complaint) to "would" (in the SAC) does not cure the defect in their standing.  Courts considering similar conditional allegations about possible future injury have held they do not establish Article III standing.  Potter v. Potnetwork Holdings, Inc., No. 19-24017, 2020 WL 1516518, at *3 (S.D. Fla. Mar. 30, 2020) (allegation that plaintiff "would continue to purchase" products in the future if she "could rely upon the truthfulness of Defendants' labeling" was insufficient); Wasser v. All Market, Inc., 329 F.R.D. 464, 471 (S.D. Fla. 2018) (allegation that plaintiffs "would purchase" the product again "if and when it is properly labeled" was insufficient); see also, e.g., Hesse v. Godiva Chocolatier, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) (plaintiffs' allegation that "if they choose to purchase Godiva's products in the future, then they may be harmed" was insufficient) (emphasis in original).  Indeed, Plaintiffs' allegations that any possible future purchases are contingent on a label change make clear that they will not purchase more Veza Sur due to its alleged mislabeling. Potter, 2020 WL 1516518, at *3.  If Veza Sur is re-labeled as Plaintiffs desire and they purchase it again at that time, they will have no injury.  Accordingly, Plaintiffs do not have standing to pursue injunctive relief.

## CONCLUSION

For all the reasons discussed, the SAC fails to state a claim.  Defendants respectfully request that this action be dismissed with prejudice, as Plaintiffs have had ample opportunity to amend their pleading based on clear instructions from the Court and have had the benefit of discovery, and further amendment will not cure the substantive defects discussed above.

## **REQUEST FOR HEARING**

In accordance with L.R. 7.1(b)(2), Defendants respectfully request oral argument.  This is a dispositive motion presenting significant issues; the Complaint is complex with seven counts; and a hearing would assist the Court by providing an opportunity for counsel to answer questions and ensuring the parties have a full and fair opportunity to address the issues.  Defendants estimate 30 minutes per side would be required for oral argument.

Dated: February 26, 2021

Respectfully Submitted,

*/s/Mikayla Espinosa*
MIKAYLA ESPINOSA
Florida Bar No. 1008227
mikaylaespinosa@gsgpa.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

JAMES F. BENNETT
Admitted *pro hac vice*
jbennett@dowdbennett.com
ADAM J. SIMON
asimon@dowdbennett.com
DOWD BENNETT LLP
7733 Forsyth Boulevard, Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
E-service: jbennett@dowdbennett.com

*Counsel for Defendants*