UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23392-BLOOM/Louis

BRYON JACKSON and MARIO MENA, JR.,

      Plaintiffs,

v.

ANHEUSER-BUSCH INBEV SA/NV, LLC
and MIAMI BEER VENTURES, LLC,

      Defendants.

_____/

**<u>OMNIBUS ORDER</u>**

     **THIS CAUSE** is before the Court upon Defendants' Anheuser-Busch Companies, LLC

("AB") and Miami Beer Ventures, LLC's ("MBV") (collectively, "Defendants") Motion to

Dismiss Second Amended Complaint, ECF No. [65] ("Motion to Dismiss"), and Plaintiffs Byron

Jackson and Mario Mena, Jr.'s (collectively, "Plaintiffs") Motion for Leave to Amend Complaint,

ECF No. [83] ("Motion to Amend"), (collectively, the "Motions").[1] The Court has carefully

reviewed the Motions, all opposing and supporting submissions, the record in this case, the

applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion

to Dismiss is granted and Plaintiffs' Motion to Amend is denied as moot.

**I.   BACKGROUND**

     Plaintiffs initiated this class action on August 14, 2020, *see* ECF No. [1], and filed an

Amended Class Action Complaint for Injunctive and Other Relief against Defendants on August

31, 2020, *see* ECF No. [17] ("FAC"). Plaintiffs assert claims based on Defendants' alleged

---

[1] Plaintiffs also filed a Motion to Defer Ruling on Motion to Dismiss, ECF No. [80], pending their anticipated request for leave to amend their complaint, which is now moot.

misrepresentations regarding their products. Specifically, Defendants operate the Veza Sur Brewing Company ("Veza Sur"), which they market as a craft brewery with Latin roots. Plaintiffs allege that Defendants misrepresent the authenticity and ownership of Veza Sur beer to deceive consumers into paying a price premium for products that consumers believe are made by an authentic, locally owned craft brewery, rather than by a subsidiary of the world's largest brewer.

Defendants moved to dismiss Plaintiffs' FAC, arguing that the FAC failed to state a claim for relief on any count and that Plaintiffs lacked standing to seek injunctive relief. ECF No. [32]. The Court held a hearing on the motion to dismiss and granted the motion on the record. ECF No. [56]. At that hearing, the Court explained that the factual allegations in the FAC lacked the requisite specificity to survive dismissal but gave Plaintiffs the opportunity to cure these pleading deficiencies by amendment. Plaintiffs ultimately filed a Second Amended Class Action Complaint for Injunctive and Other Relief, attempting to correct the deficiencies noted by the Court, which is the operative pleading in this action. *See* ECF No. [58] ("SAC").

The SAC alleges the following facts: AB is one of the largest beer brewers in America and it owns dozens of different specialized brands of beer. *Id.* ¶ 1. In the midst of a booming craft beer market in the United States, AB took efforts to gain some of the market share of craft beer drinkers. *Id.* ¶¶ 9, 19-20. As such, in 2017, Defendants, along with a number of other corporate affiliates, opened a Miami-focused craft brewery, Veza Sur Brewing Company ("Veza Sur"). *Id.* ¶¶ 24-25. However, many craft beer enthusiasts prefer authentic, locally owned craft beer to beer brewed by large companies. *Id.* ¶¶ 14-18. The SAC includes a definition of "craft" that Plaintiffs believe controls in this case:

> To qualify as a craft brewer per the Brewers Association (1) a brewery must produce six million barrels of beer or less annually; (2) less than 25 percent of the craft brewery can be owned or controlled—or equivalent economic interest—by a

beverage alcohol industry member which is not itself a craft brewer, and (3) a TTB Brewer's Notice must be present.

*Id.* ¶ 21.

Because Plaintiffs' understanding of a "craft brewer" is limited to small, local, independently owned breweries with ties to the local community, Plaintiffs allege that Defendants engaged in a series of false statements, misrepresentations, and omissions in an effort to deceive consumers into thinking Veza Sur is an authentic craft brewery with significant ties to Miami and Latin American roots. *Id.* ¶¶ 34-37. For example, although the fact that AB owns Veza Sur was reported on certain media outlets and was publicly available information, the SAC alleges that Defendants go to great lengths to omit any affiliation between AB and Veza Sur on Veza Sur's website, in its marketing and advertising statements, on its social media, and in the brewery itself. *See generally id.* ¶¶ 27-43, 64, 67. Additionally, by referring to its beers as "craft" beers and by promoting a deep connection to Miami and to Latin American heritage, Plaintiffs allege that Defendants are attempting to deceive craft beer consumers by giving off the appearance that Veza Sur is an authentic craft brewery because Defendants know they can charge a premium for craft beers. *Id.* ¶¶ 51-61.

The SAC also alleges that Defendants further misrepresent Veza Sur as being "Miami-born . . . with Latin-American roots," and they include the slogan #HechaenMiami, which translates to "Made in Miami," on the individual bottles of beer for sale, on the cartons, and in most, if not all, of their marketing and promotional materials. *Id.* ¶¶ 42-48. Despite this claimed connection to Miami, the SAC alleges that a portion of Veza Sur beer is brewed and bottled at a facility in Fort Pierce by Islamorada Brewing Company, LLC, rather than being brewed exclusively by Veza Sur at the Miami brewery. *Id.* ¶¶ 47-54. In light of this additional brewing facility, Plaintiffs allege that

certain portions of the labels on Veza Sur's beer and their packaging are misleading or are entirely false, thus further contributing to consumer deception. *Id.*

The SAC further describes each named Plaintiff's experience visiting Veza Sur's brewery and consuming its beers at home. *Id.* ¶¶ 64-69. Plaintiffs each visited the Veza Sur brewery in Miami on numerous occasions, believing it to be a locally-owned, authentic, Miami craft brewery. *Id.* They also purchased Veza Sur beer from third-party retailers to drink at home based on this same mistaken belief. *Id.* Plaintiffs both allege that they were willing to pay a premium for these allegedly authentic crafted beers, and they did so to their detriment because of the misrepresentations, omissions, and false statements Defendants perpetuated to earn greater profits. *Id.*

In the SAC, Plaintiffs assert the following seven claims for relief: Count One[2] – Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*; Count Two – Fraudulent Misrepresentation; Count Three – Unjust Enrichment; Count Four – Breach of Express Warranty, Fla. Stat. § 672.313; Count Five – Breach of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; Count Six – Negligent Misrepresentation; and Count Seven – Misleading Advertising, Fla. Stat. § 817.41. *See generally id.*

Defendants now file their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the SAC should be dismissed with prejudice because Plaintiffs failed to cure the deficiencies noted by the Court at the hearing on the prior motion to dismiss, and Plaintiffs still lack standing to pursue injunctive relief. Plaintiffs oppose the Motion and have filed their Motion to Amend, seeking leave to file a third amended complaint to allege additional facts

---

[2] The Court notes that the counts in the SAC are misnumbered. For clarity in this Omnibus Order, the Court will refer to these counts as though they were correctly numbered, as set forth above.

(but no new claims for relief) based on information that was uncovered during discovery in this case. Defendants oppose Plaintiffs' request.

## II. LEGAL STANDARD

### A. Lack of Standing Under Rule 12(b)(1)

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). It is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989). "'The law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Further, "standing requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.'" *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)), *cert. denied*, 140 S. Ct. 900 (2020). "In its absence, 'a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.'" *Id.* (quoting *Bochese*, 405 F.3d at 974). "In fact, standing is 'perhaps the most important jurisdictional' requirement, and without it, [federal courts] have no power to judge the merits." *Id.* (footnote omitted) (quoting *Bochese*, 405 F.3d at 974); *see also Valley Forge Christian Coll. v. Ams. United*

*for Separation of Church & State*, 454 U.S. 464, 472 (1982) (describing the standing requirements as "an irreducible minimum").

To establish standing under Article III, a plaintiff must allege that: (1) it "suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003). "The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004)). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006))).

**B.  Failure to State a Claim Under Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2) "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

> [However, w]here a cause of action sounds in fraud, the allegations in a complaint must satisfy Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake"; although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (per curiam) (citation omitted). In other words, a plaintiff is required to plead the "who, what, when, where, and how" pertaining to the underlying fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted). At bottom, the purpose of particularity pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior. *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted).

*Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019).

As a general rule, when reviewing a motion to dismiss, a court must accept the plaintiff's factual allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). "But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Id.* at 1337 (citing *Mamani v. Berzain*, 654 F.3d 1148, 1153-54 (11th Cir. 2011)). "A facially plausible claim must allege facts that are more than merely possible." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Stated differently, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57); *see also id.* at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

Moreover, while courts are required to accept the factual allegations contained in the complaint and the attached exhibits as true, this tenet does not apply to legal conclusions. *See id.* at 678; *see also Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000))). Indeed, although courts "must make reasonable inferences in Plaintiffs' favor, . . . [they] are not required to draw Plaintiffs' inference." *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005). "Likewise, 'unwarranted deductions of fact' are not admitted as true in a motion to dismiss." *Id.* (quoting *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). As such, where the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## C. Leave to Amend Under Rules 15(a)(2) & 16(b)(4)

Generally, Federal Rule of Civil Procedure 15 governs amendments to pleadings. Apart from initial amendments that are permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A litigant should be afforded the opportunity to test their claim on the merits as long as the underlying facts or circumstances may properly warrant relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[a] district court

need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman*, 371 U.S. at 182.

The Court of Appeals for the Eleventh Circuit has explained that "when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2, 1419 (11th Cir. 1998). Rule 16 states that requests for leave to amend after the scheduling order deadline require a showing of "good cause." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (internal quotation marks omitted); *see also Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [courts] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). Moreover, a lack of diligence "is not limited to 'a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes' but also includes 'a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.'" *De Varona v. Disc. Auto Parts, LLC*, 285 F.R.D. 671, 673 (S.D. Fla. 2012) (quoting *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009)). If the party seeking relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

When a motion for leave to amend is filed after the scheduling order deadline, courts

employ a two-step analysis. *Sosa*, 133 F.3d at 1419. First, the movant must demonstrate good cause under Rule 16(b). Good cause exists when "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007) (citation omitted). "[E]ven if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made." *Id.* In this regard, a court's "evaluation of good cause [under Rule 16] is more stringent than its inquiry into the propriety of amendment under the more liberal Rule 15." *Id.* (citing *Sosa*, 133 F.3d at 1418). Accordingly, "the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired." *Id.*

Next, the movant must establish that it acted diligently in seeking leave to amend. Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period, (2) whether the information supporting the proposed amendment was available to the movant, and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See Sosa*, 133 F.3d at 1419. Moreover, a movant "must establish good cause for their delay in seeking to amend the pleadings after the Court's deadline for amendment before the Court may consider whether to grant leave to amend under Rule 15." *Remington v. Newbridge Sec. Corp.*, No. 13-cv-60384, 2014 WL 505153, at *12 (S.D. Fla. Feb. 7, 2014).

### III. DISCUSSION

Defendants move to dismiss the SAC with prejudice because the SAC fails to state any viable claims for relief, and it fails to cure the deficiencies noted by the Court at the hearing on the prior motion to dismiss. They also contend that this Court lacks jurisdiction to hear Plaintiffs'

Magnuson-Moss Warranty Act claim in Count VI. Finally, Defendants assert that Plaintiffs do not have standing to move for injunctive relief in Count I, as they have failed to allege any real threat of future harm. Plaintiffs oppose the Motion to Dismiss and argue that they have sufficiently pled each claim in their SAC.

Plaintiffs have also moved to amend the SAC to allege additional facts that were uncovered during discovery. The Motion to Amend does not seek to assert new counts or add any additional defendants. Defendants, however, oppose the Motion to Amend because it is untimely, brought for an improper purpose, unduly prejudicial, and futile.

The Court will address each Motion in turn.

### A. Defendants' Motion to Dismiss

As discussed above, Defendants' Motion to Dismiss argues that Plaintiffs have failed to state a claim in their SAC and have failed to cure the pleading deficiencies that the Court noted at the hearing on the prior motion. As such, Defendants contend that the SAC should be dismissed with prejudice. Plaintiffs maintain that they have clearly, specifically, and sufficiently set forth each claim for relief as the Court instructed. The Court will separately address the parties' respective arguments on each individual count below, although not in the same order that they were raised in the briefing.

#### 1. Heightened Pleading Standard Under Rule 9(b)

In addition to the plausibility requirement under Rule 8(a), pleadings that assert claims sounding in fraud are also subject to a heightened pleading requirement under Rule 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) therefore requires that a plaintiff "offer more than mere conjecture," *U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002),

and "requires that a complaint plead facts giving rise to an inference of fraud," *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008).

"Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when, where, and how" of the alleged misconduct). "Furthermore, when multiple defendants are involved in the alleged fraud 'the complaint must distinguish among defendants and specify their respective role in the alleged fraud.'" *State Farm Mut. Auto. Ins. Co. v. Duval Imaging, LLC*, No. 3:07-cv-627-J-20HTS, 2008 WL 11433206, at *1 (M.D. Fla. Jan. 15, 2008) (quoting *Am. Bank & Tr. v. Frogel*, 726 F. Supp. 1292, 1294 (S.D. Fla. 1989)). Nevertheless, "Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Rule 9(b)'s particularity requirement serves to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Zeimba*, 256 F.3d at 1202 (internal quotation marks omitted); *see also Haynes v. JPMorgan Chase Bank, N.A.*, 466 F. App'x 763, 765 (11th Cir. 2012) (same). "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the

defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (internal quotation marks omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of[.]" (internal quotation marks omitted)); *Antilles Trading Co., S.A. v. Scientific-Atlanta, Inc.*, 117 F.R.D. 447, 450 (N.D. Ga. 1986) ("[I]n considering a motion to dismiss for failure to plead fraud with particularity, a court must carefully consider whether the goals of Rule 9(b) will be advanced"). In other words, "[T]his particularity requirement is satisfied if the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1318 (S.D. Fla. 2013).

Plaintiffs assert numerous claims of fraud, which must adhere to Rule 9(b)'s heightened pleading standards—namely, Count Two – Fraudulent Misrepresentation,[3] Count Six – Negligent Misrepresentation,[4] and Count Seven – Misleading Advertising.[5] On each of these claims, Rule

---

[3] "A claim for fraudulent inducement is [] subject to Rule 9(b) heightened pleading standards." *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011); *see also Brady v. Medtronic, Inc.*, No. 13-62199-CIV, 2015 WL 11181971, at *2 (S.D. Fla. Mar. 30, 2015) (same); *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014) (same).

[4] "Rule 9(b)'s heightened pleading standard [also] applies to negligent misrepresentation claims asserted under Florida law because such claims sound in fraud." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019) (internal quotation marks and citations omitted); *see also State Farm Fire & Cas. Co. v. Kelgard as Tr. of Sheryl E. Kelgard Revocable Tr.*, No. 19-cv-62355, 2020 WL 5018162, at *2 (S.D. Fla. Mar. 27, 2020) ("[C]laims for negligent misrepresentation and [] claims for fraudulent inducement must be pled according to the heightened pleading standard of Rule 9(b)."); *Ostreyko v. B.C. Morton Org., Inc.*, 310 So. 2d 316, 318 (Fla. 3d DCA 1975) ("In this state, a negligent misrepresentation is considered tantamount to actionable fraud.").

[5] "A claim for false and misleading advertising is also subject to Rule 9(b) heightened pleading standards." *Begualg Inv. Mgmt. Inc.*, 2011 WL 4434891, at *4; *see also Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th

9(b) requires that Plaintiffs "specifically alleg[e] more than the vague and conclusory statement that they were induced by the misrepresentation" to withstand a motion to dismiss for failure to state a claim. *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 3d DCA 1995). In addition, as explained more fully below, the Court concludes that the FDUTPA claim in Count One and the unjust enrichment claim in Count Three must also satisfy Rule 9(b)'s particularity requirements. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) (holding that plaintiffs must plead non-fraud claims with particularity when those claims are based on defendants' alleged fraudulent conduct); *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013) ("Here, every claim asserted . . . is subject to Rule 9(b)'s heightened pleading standards for fraud. All of the claims for relief—even those that do not require proof of fraudulent intent—are based on alleged fraudulent representations and omissions that Defendants made . . . . Therefore, Rule 9(b) and the policies supporting it require [the plaintiff] to plead these claimed fraudulent acts with particularity.").

Regarding Count One, Rule 9(b)'s particularity requirement applies to the FDUTPA claim. It is worth noting that courts in this Circuit are split on the issue of whether FDUTPA claims are categorically excluded from Rule 9(b)'s requirements or are subject to those requirements only when they sound in fraud. "Recently, however, it appears that a trend has emerged: Absent an allegation of fraudulent conduct, a FDUTPA claim does not need to meet Rule 9(b)'s heightened-pleading requirement." *Total Containment Sols., Inc. v. Glacier Energy Servs., Inc.*, No. 2:15-cv-63-FtM-38CM, 2015 WL 3562622, at *2 (M.D. Fla. June 5, 2015). Conversely, because FDUTPA

---

Cir. 1992) ("In order to prove a violation of Section 817.41, Florida law requires the plaintiff to prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement."); *Simpson v. FWM Laboratories, Inc.*, No. 09-61771-CIV, 2010 WL 1257714, at *2, *4 (S.D. Fla. March 29, 2010) (applying Rule 9(b) and noting that "Plaintiff's [misleading advertising] claim is considered one for fraudulent inducement.").

claims uniquely sound in both tort and fraud, courts have regularly required that such claims satisfy the heightened standard under Rule 9(b). *See Koch v. Royal Wine Merchs., Ltd.*, 847 F. Supp. 2d 1370, 1381 (S.D. Fla. 2012); *see also Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2011). Here, the Court finds that Plaintiffs' allegations sound primarily in fraud and they must therefore be subject to Rule 9(b)'s heightened pleading requirements. *See Librizzi v. Ocwen Loan Servicing, LLC*, No. 15-60107-CIV, 2015 WL 4761647, at *9 (S.D. Fla. Aug. 13, 2015) (finding Rule 9 to apply to FDUTPA claim where defendant had violated FDUTPA "through deception"); *see also USA Nutraceuticals Grp. v. BPI Sports, LLC*, No. 15-cv-80352, 2016 WL 4254257, at *3 (S.D. Fla. Feb. 16, 2016).

Similarly, with regard to Count Three, the Court finds that the unjust enrichment claim is also subject to the Rule 9(b) pleading requirements because it arises out of alleged fraudulent conduct. *See U.S. Stepe v. RS Compounding LLC*, 325 F.R.D. 699, 710 (M.D. Fla. 2017); *see also W.W. Sports Importadora Exportadora e Comercial Ltda v. BPI Sports, LLC*, No. 0:16-cv-60147, 2016 WL 9375202, at *4 (S.D. Fla. Aug. 11, 2016) (unjust enrichment claim premised on fraudulent conduct subject to Rule 9(b) heightened particularity requirement); *Allstate Indem. Co. v. Fla. Rehab & Injury Ctrs. Longwood, Inc.*, No. 6:15-cv-1740-Orl-41GJK, 2016 WL 7177624, at *3 (M.D. Fla. July 26, 2016) (stating that the unjust enrichment claim sounded in fraud "and must, therefore, meet the heightened pleading standards as set forth in Federal Rule of Civil Procedure 9"); *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV, 2014 WL 5846735, at *1 (S.D. Fla. Nov. 12, 2014) ("[I]t appears to be the rule that a claim for unjust enrichment is subject to Rule 9(b) only if it is premised on fraud.").

### 2. Florida Deceptive and Unfair Trade Practices Act

Turning to the merits of the Motion, Defendants first argue that Plaintiffs have failed to

adequately plead their FDUTPA claim in Count One. Defendants contend that the SAC fails to specifically allege any actionable misrepresentations or omissions upon which Plaintiffs' claim could lie and that, regardless, FDUTPA's safe harbor precludes Plaintiffs' claim here. Defendants also argue that Plaintiffs lack standing to pursue a claim for injunctive relief in Count One because Plaintiffs fail to allege any concrete, ongoing threat of future injury. Because the alleged lack of standing presents a threshold jurisdictional question, the Court addresses it first before proceeding to Defendants' substantive challenges to Count One.

### a. Standing to Seek Injunctive Relief

Defendants argue that Plaintiffs cannot seek injunctive relief under their FDUTPA claim because they have failed to sufficiently allege any possibility of future harm for Article III standing. As noted above, one element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines*, 521 U.S. at 818. To demonstrate standing under Article III, a plaintiff must show that: "(1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly*, 331 F.3d at 819-20; *see also Dermer v. Mia.-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redress[a]bility.").

> The allegations necessary to establish standing depend on the type of relief sought. To establish standing when seeking retrospective relief, a plaintiff must show that he has suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. But if a plaintiff seeks *prospective* relief, such as a declaratory judgment, he must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). And that future injury must be "real," "immediate," and "definite." *Id.* at 1347.

*Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356-57 (11th Cir. 2021).

"'The party invoking federal jurisdiction bears the burden of establishing' standing," *Clapper*, 568 U.S. at 411-12 (quoting *Lujan*, 504 U.S. at 561), and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). In other words, "[t]hat a plaintiff has standing to bring one claim does not save another claim for which he does not; 'standing is not dispensed in gross.'" *Mack*, 994 F.3d at 1356 (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)); *see also Davis*, 554 U.S. at 733-34.

In addition, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original). "A determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive . . . relief." *Marty v. Anheuser-Busch Companies*, 43 F. Supp. 3d 1333, 1352 (S.D. Fla. 2014) (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001)). "[A] plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Hous. v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013) (quoting *Wooden*, 247 F.3d at 1284).

As such, Plaintiffs' "standing to seek the injunction requested depend[s] on whether [they are] likely to suffer future injury." *Id.* at 1334 (quoting *Lyons*, 461 U.S. at 105). Indeed, although FDUTPA allows a plaintiff to pursue injunctive relief, "it cannot supplant Constitutional standing

17

Case No. 20-cv-23392-BLOOM/Louis

requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (internal citation omitted). In order to have standing to seek injunctive relief, a plaintiff must allege an intent to resume purchasing the products at issue in the future. *See Wasser v. All Mkt., Inc.*, No. 16-21238-CIV, 2017 WL 11139701, at *6 (S.D. Fla. Nov. 13, 2017); *cf. Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1228 (S.D. Fla. 2018) (collecting cases holding that plaintiffs lacked standing for FDUTPA injunctive relief where they did not allege an intent to purchase the product again); *Cox v. Porsche Fin. Servs., Inc.*, 337 F.R.D. 426, 434 (S.D. Fla. 2020) ("plaintiffs alleging FDUTPA violations in . . . [will] not have Article III standing to pursue injunctive relief where they fail[] to allege an intent to purchase the defendant's products in the future" (citing *In re Monat Hair Care Prod. Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 18-md-02841, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019))).

Here, the SAC sets forth the following allegations on Plaintiffs' threat of future injury:

> Based on Defendants' misrepresentations and claims, BYRON JACKSON purchased beer that had less value than what he paid, perpetuated the misrepresentation to friends, and has suffered legally cognizable damages proximately caused by Defendant's misrepresentations and false advertising. After learning the truth about A-B's mislabeling of Veza Sur, BYRON JACKSON stopped visiting the brewery and purchasing it at retailers. However, BYRON JACKSON would resume visiting the brewery and resume purchasing Veza Sur in the future if he learns that it is accurately labeled.

ECF No. [58] ¶ 65.

> Based on Defendants' representations and claims, MARIO MENA, JR. purchased beer that had less value than what he paid, perpetuated the misrepresentation to friends, and has suffered legally cognizable damages proximately caused by Defendant's misconduct. After learning the truth about A-B's mislabeling of Veza Sur, MARIO MENA, JR. stopped visiting the brewery and purchasing it at retailers. However, MARIO MENA, JR. would resume visiting the brewery and resume purchasing Veza Sur in the future if he learns that it is accurately labeled.

ECF No. [58] ¶ 67.

These allegations, taken as true, demonstrate that Plaintiffs face a reasonable threat of future harm if the deceptive and unfair trade practices continue. Indeed, when coupled with Defendants' alleged ongoing pattern of misrepresentations, omissions, and deceit, the Court finds that there is a real and immediate possibility that Plaintiffs will be harmed again in the future. Therefore, the Court is satisfied that Plaintiffs have established Article III standing for the purpose of seeking injunctive relief. *See Wasser*, 2017 WL 11139701, at *6 ("Here, the Plaintiffs specifically allege the continued use by All Market of the misleading packaging and that they will purchase the product in the future, thus allowing for the distinct possibility of future harm.").

### b. Failure to State a Claim Under FDUTPA

Defendants also argue that the Court should dismiss Plaintiffs' FDUTPA claim because, despite being granted an opportunity to amend the FAC to cure the pleading deficiencies, Plaintiffs' have yet again failed to allege facts relating to Defendants' misrepresentations or omissions with the requisite particularity under Rule 9(b). Likewise, Defendants assert that Plaintiffs have failed to sufficiently allege a FDUTPA claim because neither calling Veza Sur a "craft" brewery, nor omitting any information about AB's corporate affiliation with Veza Sur would mislead a reasonable consumer. Rather, Defendants note that AB's ownership of Veza Sur has been widely publicized since the brewery's inception, which Plaintiffs seem to acknowledge in the SAC. *See* ECF No. [58] at 6-7 (discussing news articles and press releases on AB's ownership of Veza Sur). Defendants further assert that none of the statements on Veza Sur's packaging, labeling, or online marketing and advertising are deceitful or untruthful. At most, they argue, these statements are nonactionable puffery that do not rise to the level of being deceptive or misleading. Nevertheless, Defendants argue that FDUTPA's safe harbor provision precludes any finding of liability based on Veza Sur's labeling because these labels are specifically required

by federal law and have been approved for use by the United States Treasury's Alcohol and Tobacco Tax & Trade Bureau ("TTB"). The Court addresses each of these arguments below.

FDUTPA "protect[s] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. § 501.202(2); *see also Point Conversions, LLC v. WPB Hotel Partners, LLC*, --- So. 3d ---, No. 4D19-3017, 2021 WL 2213304, at *6 (Fla. 4th DCA 2021). Under FDUTPA, a claim for damages has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

> [FDUTPA] applies to "unfair or deceptive acts or practices" in "trade or commerce." Fla. Stat. § 501.204(1). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any . . . thing of value." Fla. Stat. § 501.203(8). An "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. [4th DCA] 2001)). A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* at 777.

*Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019).

Regarding the first element of a FDUTPA claim, the only element subject to challenge in the Motion to Dismiss, "deception may be accomplished by innuendo" and through omissions, "rather than outright false statements." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327 (S.D. Fla. 2017) (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen., Dep't of Legal Affs., State of Fla.*, 761 So. 2d 1256, 1264 (Fla. 3d DCA 2000) ("*Millennium*")). "Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, '[a] party asserting a deceptive trade practice claim need not show actual

reliance on the representation or omission at issue.'" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-84 (11th Cir. 2016) (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000)). "The deception must be 'probable, not possible,' and must be likely to cause injury to a reasonably relying consumer." *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015); *see also Millennium*, 761 So. 2d at 1263 (applying Federal Trade Commission interpretation and noting that the standard is "likely to mislead," not "tendency and capacity to mislead").[6]

"In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the *net impression* created." *FTC v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010) (emphasis added). "If the statements are 'likely to mislead reasonable consumers,' then it makes no difference if the statements are 'technically or literally true.'" *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1299 (S.D. Fla. 2017) (quoting *FTC v. Peoples Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007)); *see also Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018). This standard applies regardless of whether a plaintiff is proceeding individually or as part of a class action. *See Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. 3d DCA 2000) ("[M]embers of a class proceeding under [FDUTPA] need not individually prove reliance on the alleged misrepresentations. It is sufficient if the class can establish that a reasonable person would have relied on the representations.").

FDUTPA also contains a so-called "safe harbor" provision, which precludes liability for "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013). "The safe-

---

[6] FDUTPA incorporates the standards on unfairness and deception that are issued pursuant to the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq. See* Fla. Stat. § 501.203(3); *see also* Fla. Stat. § 501.204(2) (stating that, when construing "unlawful acts and practices," "great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts pursuant to 15 U.S.C. § 45(a)(1).").

harbor provision applies to acts that are required or permitted not only by statutes but also by

regulatory action." *Pye v. Fifth Generation, Inc.*, No. 4:14cv493-RH/CAS, 2015 WL 5634600, at

*3 (N.D. Fla. Sep. 23, 2015) (citations omitted); *see also Hauser v. Steward Melbourne Hosp.,*

*Inc.*, No. 6:19-cv-1150-Orl-41EJK, 2020 WL 917259, at *2 (M.D. Fla. Feb. 11, 2020).

> The safe harbor does not exist merely because state or federal law does not prohibit
> an act or practice. *Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*,
> 643 So. 2d 22, 24 (Fla. 4th DCA 1994). A defendant must establish the safe harbor's
> applicability. *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1344 (S.D.
> Fla. 2014). Whether the safe harbor applies may be decided as a matter of law. *See,*
> *e.g.*, *Prohias v. AstraZeneca Pharms., L.P.*, 958 So. 2d 1054, 1056 (Fla. 3d DCA
> 2007); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234 (S.D. Fla. 2007).

*Casey v. Fla. Coastal Sch. of L., Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *6-7

(M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 10818746 (M.D. Fla.

Sept. 29, 2015).

### i. Heightened Pleading Requirements

As explained above, because Plaintiffs' FDUTPA claim sounds in fraud, the Rule 9(b)

heightened pleading requirements apply. *See PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, No.

3:12-cv-1366-J-20JBT, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) ("FDUTPA claims

that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed

by Rule 9(b)'s heightened pleading requirements." (collecting cases)).

> "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were
> made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making
> (or, in the case of omissions, not making) same, and (3) the content of such
> statements and the manner in which they misled the plaintiff, and (4) what the
> defendants obtained as a consequence of the fraud."

*State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC*, No. 6:19-cv-1837-Orl-41LRH, 2020

WL 2630226, at *5 (M.D. Fla. May 22, 2020).

Defendants first argue that Plaintiffs have again failed to state a claim under FDUTPA because they have not alleged specific and detailed facts regarding Defendants' alleged deceitful misrepresentations and omissions to satisfy Rule 9(b). Indeed, Defendants correctly note that, although this Court discussed the lack of particularity in the FAC in detail with Plaintiffs at the hearing on the Defendants' prior motion to dismiss, many of the allegations in Plaintiffs' SAC suffer from the same issues. For example, the SAC contains almost five pages worth of allegations describing each Plaintiff's individual experiences with Veza Sur's brewery, its marketing materials, and its bottled beers that were purchased at third-party retailers for consumption at home. *See* ECF No. [58] at 13-18. In recounting these experiences and interactions, Plaintiffs omit the "who, what, when, where, and how" of Defendants' alleged misconduct, despite Rule 9(b)'s requirements and this Court's instructions at the hearing. *See Garfield*, 466 F.3d at 1262; *see also U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217,1222 (11th Cir. 2012) ("The particularity requirement of Rule 9(b) is satisfied if the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.").

Instead, Plaintiffs present broad, generalized statements about Veza Sur's "misleading advertisements" on Instagram and on signs in the Wynnwood area, unspecified conversations with Veza Sur staff about the creators' backgrounds, "marketing and information provided to patrons" suggesting that Veza Sur was a local craft brewery, and Defendants' "misrepresentations and omissions" which led them to believe Veza Sur was authentic and locally owned craft brewery. *See, e.g.*, ECF No. [58] ¶¶ 64, 67. Moreover, Plaintiffs' allegations regarding Veza Sur's deceptive bottle labels and their allegedly misleading statements on their website do not absolve them of their pleading requirements under Rule 9(b). Indeed,

> [a]lthough the [SAC] alleges facts as to the substance of Defendants' alleged misrepresentations and concealments, it fails to allege with specificity the time at which they occurred. The [SAC] does not, for example, state when Plaintiff viewed the alleged misrepresentations on Defendants' website, or even whether it—or any other consumer—viewed them at all before purchasing the allegedly defective products.

*PB Prop. Mgmt., Inc.*, 2013 WL 12172912, at *7 (citation omitted). The SAC's generalized allegations regarding Defendants' misrepresentations and omissions fail to provide Defendants or this Court with any detailed and particularized facts from which to infer a plausible claim sounding in fraud. *See Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*, No. 19-cv-23586, 2021 WL 2653819, at *3 (S.D. Fla. Feb. 8, 2021) (explaining that the allegation that the third-party defendant "'engaged in unfair practices by manufacturing the Vessel' which proved to be unsuitable for the purposes it was advertised for" fell short of satisfying Rule 9(b)'s requirement of pleading FDUTPA claims with specificity"). As Plaintiffs failed to cure these pleading deficiencies, despite being given the opportunity to do so, the Court concludes that the FDUTPA claim in Count One is due to be dismissed on this basis alone.

### ii. FDUTPA Safe Harbor Provision

The Court next turns to Defendants' arguments that the safe harbor provision should apply because the TTB has reviewed and approved Veza Sur's beer bottle labels for use and they satisfy the federal labeling requirements for malt beverages. The TTB is charged with creating and enforcing federal regulations on alcoholic beverages in order to prevent consumer deception. *See* 27 U.S.C. §§ 201-219 ("Federal Alcohol Administration Act" or the "FAAA"). For domestic beers such as Veza Sur, TTB regulations require that:

> On labels of containers of domestic malt beverages there shall be stated the name of the bottler or packer and the place where bottled or packed. The bottler's or packer's principal place of business may be shown in lieu of the actual place where bottled or packed if the address shown is a location where bottling or packing operation takes place. The appropriate TTB officer may disapprove the listing of a

principal place of business if its use would create a false or misleading impression
as to the geographic origin of the beer.

27 C.F.R. § 7.25(a)(1).

In addition, federal regulations governing the labeling requirements for malt beverages
contain multiple consumer protection provisions, which prohibit engaging in labeling practices
that could deceive consumers or otherwise cause confusion. *See* 27 C.F.R. §§ 7.20, 7.21, 7.29.
Nonetheless, these regulations allow the use of the "name or trade name of the brewer" on bottle
labels, containers, and/or cartons. *See* 27 C.F.R. §§ 25.142(a), 25.143(a). Furthermore, Florida law
permits the use of a fictitious name in conducting business within this State long as the fictitious
name is properly registered with the Florida Division of Corporations ahead of time. *See generally*
Fla. Stat. § 865.09.

Importantly, in order to avoid the distribution of alcoholic beverages that violate federal
labeling requirements, the FAAA requires that a bottler or packer apply for and obtain a
"Certificate of Label Approval" ("COLA") prior to the use of any new labeling. *See* 27 U.S.C.
§ 205(e); 27 C.F.R. § 7.41(a). The TTB only grants approval of a label upon making a
determination that the submission "complies with applicable laws and regulations." 27 C.F.R.
§ 13.21(a). The parties agree that Veza Sur's Spanglish Latin Lager label, which is pictured in the
SAC, was approved by the TTB through the COLA process.[7] Plaintiffs, however, dispute the
import of this approval as it relates to the instant FDUTPA claim.

---

[7] The Court previously granted Defendants' Unopposed Request for Judicial Notice in Support of their
Motion to Dismiss Second Amended Complaint, ECF No. [63], and took judicial notice of a copy of the
COLA issued by the TTB for Veza Sur's Spanglish Latin Lager beer and of records from the Florida
Department of State pertaining to the registration of Veza Sur Brewing Co. as a fictitious name to be used
by MBV and Islamorada Brewing Company, LLC ("Islamorada"). *See* ECF Nos. [62-2], [62-3], & [62-4].
Because Plaintiffs neither objected to these materials nor challenged their authenticity, the Court properly
considers them in resolving the Motion to Dismiss.

Upon review, the Court agrees with Defendants that the FDUTPA safe harbor provision applies because the TTB-approved Spanglish label represents an act or practice that is "required or specifically permitted by federal . . . law." Fla. Stat. § 501.212(1). Indeed, the Court finds no merit to Plaintiffs' argument that Defendants intentionally omitted any mention of MBV and/or Islamorada on the Spanglish label in order to deceive consumers. Rather, the information included on this label satisfied the labeling requirements under federal law and, as noted above, the use of fictitious names, such as "Veza Sur Brewing Co.," during the daily business operations is permitted under Florida law. Similarly, to the extent that Plaintiffs assert that Defendants had additional obligations, beyond those imposed by the TTB and the federal regulations, to disclose AB, MBV, and/or Islamorada as relevant entities on their labels, the Court finds that this position is wholly unsupported. Moreover, the photograph of a Spanglish bottle in the SAC demonstrates that Defendants accurately disclosed both the Miami brewery location and the Fort Pierce bottling location on their packaging.

The fact that Veza Sur successfully obtained the TTB's approval of its Spanglish label further supports the application of the FDUTPA safe harbor provision in this case. Notably, courts across the country have come to different conclusions on whether the COLA process is sufficient to trigger the applicable safe harbor provisions under state consumer protection laws. However, a court in the Northern District of Florida previously held that the safe harbor provision under FDUTPA applied where the allegedly deceptive packaging had received a COLA from the TTB. *See Pye*, 2015 WL 5634600, at *4. The Court finds the reasoning in *Pye* persuasive and the same result is warranted here. Indeed, "the TTB, a regulator charged with ensuring that the representations on the [Veza Sur] label are not misleading, has approved the use" of the phrases, fictitious names, and brewing locations listed on Defendants' Spanglish label. *Id.* Thus, as in in

26

*Pye*, the safe harbor provision applies to this claim because "[t]he use of [the approved] terms is specifically permitted by federal law within the meaning of Florida Statutes § 501.212." *Id.* As such, the Motion to Dismiss is granted on Plaintiffs' FDUTPA claim based on the TTB-approved labels.

### iii.  Representations Regarding "Craft" Beer and Ties to Miami

Defendants also argue that the FDUTPA claim should be dismissed because Plaintiffs fail to state a viable claim based on the statement that Veza Sur is a "Miami-born craft brewery with Latin-American roots." Specifically, Defendants state that calling Veza Sur beer "craft" beer is not inherently deceptive. They further argue that the statements regarding Veza Sur's ties to Miami cannot form the basis for a FDUTPA claim because these statements are true and are puffery. Plaintiffs respond that Defendants misrepresent the nature of the beer Veza Sur sells and the location in which it is made. These misrepresentations, according to Plaintiffs, are intended to deceive consumers into purchasing Veza Sur beer at a higher price because they believe it is authentic craft beer.

Upon review, the Court finds that Plaintiffs have failed to state a FDUTPA claim based on the representation that Veza Sur is a Miami-born craft brewery. Initially, the Court notes that the National Brewer's Association's definition of craft beer is but one definition of a term that is otherwise widely used and well known in day-to-day conversation. However, what a certain individual might determine to qualify as "craft" beer is necessarily a subjective one, depending on the individual's tastes and interests. Moreover, describing craft beer as "authentic" adds yet another layer of subjective variation to the meaning. As such, the Court does not find that Defendants' use of the term "craft" beer in Veza Sur's marketing suggests a per se deceptive misrepresentation.

Similarly, Defendants' statements that the Veza Sur brand is "Miami-born" or "Made in Miami" are not likely to deceive a reasonable consumer that the beers are locally made because Veza Sur beer *is*, in fact, brewed in part in Miami at its original location. Indeed, the fact that the Miami brewery produces a portion of Veza Sur's beer, in addition to the Fort Pierce brewery, makes the facts of this case distinguishable from the cases relied upon by Plaintiffs that address deceptive labeling on points of origin. *See* ECF No. [75] at 7-9. Thus, a reasonable consumer is unlikely to be deceived by the factually accurate representation that Veza Sur beer is brewed at its original Miami location. Likewise, Veza Sur's use of hashtag slogan #HechaenMiami, which translates to "Made in Miami," is also unlikely to be deceptive as hashtags are social media marketing tools that streamline data categorization. Thus, in the Court's view, this hashtag slogan is more akin to "puffery" than a statement of fact that could deceive a reasonable consumer. *See Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB SHKx, 2019 WL 2619666, at *12 (C.D. Cal. May 20, 2019) ("'Puffery' typically involves making 'generalized statements,' not making specific claims, or making claims 'so exaggerated as to preclude reliance by consumers.'" (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990))).

*       *       *

In sum, the Court finds that Plaintiffs have failed to sufficiently plead their FDUTPA claim with the requisite specificity, that the labeling and marketing employed is not likely to deceive a reasonable consumer, and that the safe harbor provision applies to bar liability on Defendants' TTB-approved labels.

### 3. Fraudulent Misrepresentation, Negligent Misrepresentation, and Misleading Advertising

As with the FDUTPA claim above, Defendants also argue that this Court should dismiss each of the various theories of fraud asserted in Count Two (fraudulent misrepresentation), Count Six (negligent misrepresentation), and Count Seven (misleading advertising) because Plaintiffs have failed to allege any materially false statements attributable to the Defendants, whether they be through the Veza Sur labels, packaging, internet advertising, etc., that were untrue or materially false. Additionally, Defendants note that dismissal of these fraud-based claims is warranted because, as pled, the SAC fails to comply with the dictates of Rule 9(b), given the absence of any factual specificity or particularity as to the alleged fraudulent conduct. Plaintiffs, however, respond that the SAC sufficiently alleges the claims of fraud with particularity. Because these causes of action all involve similar elements and are each subject to the heightened pleading requirements of Rule 9(b), the Court will address these claims together.

To assert a viable cause of action for fraudulent misrepresentation under Florida law, a plaintiff must establish the following four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1338 (S.D. Fla. 2011) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). "In certain circumstances, '[f]raud also includes the intentional omission of a material fact.'" *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) (quoting *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001)).

Similarly, to state a claim for negligent misrepresentation in Florida, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) that the defendant made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity; (3) that the defendant intended that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993).

Finally, to assert a claim for misleading advertising under § 817.41, Fla. Stat., a plaintiff must plead that: "(1) the representor made a misrepresentation of a material fact; (2) the representor knew or should have known of the falsity of the statement; (3) the representor intended that the representation would induce another to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation." *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-cv-61255, 2020 WL 6700449, at *4 (S.D. Fla. Oct. 20, 2020).

Each of these causes of action sound in fraud and is subject to the heightened pleading requirements of Rule 9(b), which requires specific allegations regarding "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). "[B]are allegation[s] of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019).

Plaintiffs argue that they have alleged sufficient facts to establish that Defendants intentionally withheld and omitted certain information about the Veza Sur brand from its website, brewery premises, and packaging in order to attract consumers who are willing to pay premiums

for what they believe to be authentic, local craft beer. For example, Plaintiffs note that Defendants deliberately omitted all information regarding AB's affiliation with Veza Sur from the brewery's website, its marketing campaigns, and its Miami brewery location. Likewise, the SAC alleges that labeling Veza Sur beers as "craft" beers was a knowingly false statement intended to induce customers to pay premiums for Defendants' products. Furthermore, Plaintiffs allege that Defendants also misrepresented the true nature of Veza Sur's operations by suggesting that the brewery was a small, locally owned and operated, independent business based solely out of Miami, when in reality it is a "macrobrew, [AB] owned brand" with a separate bottling operation in Fort Pierce and no local ties to the community. ECF No. [58] ¶ 60.

Upon review of the allegations in the SAC, the Court concludes that Plaintiffs have failed to allege with any degree of specificity the precise fraudulent conduct or material misrepresentation at issue. Just as the Court has determined that Plaintiffs' FDUTPA claim must be dismissed for failing to meet the heightened pleading requirements for fraud, so too must the fraud-based claims in Counts Two, Six, and Seven be dismissed. *See Merch. One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 WL 248608, at *6-7 (S.D. Fla. Jan. 16, 2020) ("Here, while Plaintiff[s] provide[] some examples of what [they] contend[] constitute fraudulent statements made by Defendants, the Complaint fails to satisfy the requirements of Rule 9(b) because Plaintiff[s] must set forth precisely each statement alleged to be fraudulent."). Indeed, Plaintiffs' generalized allegations regarding the misrepresentations made by Defendants fail to satisfy the requirements of Rule 9(b) because Plaintiffs do not allege any details about when Defendants made each misrepresentation, or the manner in which they made these misrepresentations to Plaintiffs. *See Triton II, LLC v. Randazzo*, No. 18-cv-61469, 2018 WL 4932342, at *5 (S.D. Fla. Oct. 10,

2018); *Llano Funding Grp. v. Cassidy*, No. 14-cv-62863, 2015 WL 4698407, at *4-5 (S.D. Fla. Aug. 6, 2015).

Likewise, Plaintiffs appear to argue that Defendants had a duty to disclose their ownership of Veza Sur, yet they present no basis for any such duty. "Fraud based upon a failure to disclose material information exists only when there is a duty to make such a disclosure." *Garofalo v. Proskauer Rose LLP*, 253 So. 3d 2, 7 (Fla. 4th DCA 2018) (citing *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003)). The threshold question of whether one has a duty to disclose is a matter of law to be decided by the court. *Id.* Accordingly, the Court concludes that Plaintiffs' fraud claims in Counts Two, Six, and Seven must be dismissed as they have not been pled with particularity as required by Rule 9(b).

### 4. Breach of Express Warranty

Defendants also seek dismissal of Count Four, which asserts a claim for breach of express warranty pursuant to § 672.313, Fla. Stat., arguing that Plaintiffs have failed to sufficiently allege the necessary elements of that claim, including privity. Defendants also argue that the SAC contains no allegations regarding any express warranties Defendants made, and references to Veza Sur's ties to Miami and its Latin American roots cannot form the basis of an express warranty claim because they amount to puffery and sales talk. Plaintiffs respond that the breach of express warranty claim is sufficiently pled by pointing to specific allegations in the Complaint describing Veza Sur as a small, local Miami-based craft brewery.

> To state a cause of action for breach of an express warranty under Florida's U.C.C., the plaintiff "must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011) (citing *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977)). An express warranty may arise by words or conduct. *Miles v. Kavanaugh*, 350 So. 2d

1090, 1093 (Fla. 3d DCA 1977). Florida's U.C.C. specifies three circumstances under which an express warranty may arise.

*Armadillo Distr. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co.*, 142 F. Supp. 3d 1245, 1253-54 (M.D. Fla. 2015).

Section 672.313, Florida Statutes, governs the formation of express warranties by sellers:

(1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Fla. Stat. § 672.313.

A claim for a breach of warranty is essentially a breach of contract claim, and "[a]t a minimum, a claim for breach of contract must identify the actual terms of the contract allegedly breached." *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020). "[A]n express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction, and on which the buyer justifiably relies as part of the 'basis of the bargain.'" *Id.* at 1324-25 (internal citations omitted) (quoting *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. 1st DCA 1984)). "Statements made in promotional materials, advertisements, and brochures may be sufficient to create an express warranty if the buyer relies on those statements in making his purchase[,]" but "mere puffery or sales talk is not

sufficient to create an express warranty." *Carter v. Ford Motor Co.*, No. 19-cv-62646, 2021 WL 1165248, at \*18 (S.D. Fla. Mar. 26, 2021) (quoting *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013)); *see also Carter Hawley Hale Stores, Inc. v. Conley*, 372 So. 2d 965, 969 (Fla. 3d DCA 1979) ("[C]ertain affirmations of the seller amount only to 'puffing' and do not give rise to warranties, e.g., the 'nicest car in town.'"); *see also Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995) (finding a seller's representations that a building was "a very good building" and "an excellent deal" were "clearly statements of opinion" and not actionable).

Plaintiffs cite the same factual allegations in the SAC that form the basis of their other claims in an effort to demonstrate what specific express warranties were given. Yet, Plaintiffs' claim is insufficiently pled because, aside from stating that the beers failed to conform to the affirmations given, Plaintiffs fail to identify which warranties were breached. This is woefully insufficient to state a claim for breach of an express warranty. *See Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*, No. 19-cv-23586, 2021 WL 2653819, at \*3 (S.D. Fla. Feb. 8, 2021) (concluding that the third-party plaintiff had failed to state a claim for breach of express warranty because the "Third-Party Complaint [did] not identify what express warranties the Third-Party Defendants made, or even which warranties were breached").

Further, to the extent that the breach of express warranty claim is based upon Veza Sur's statements that it is "Miami-born," the Court is unpersuaded that these statements are sufficient to give rise to an express warranty. Indeed, as discussed above, Veza Sur's original brewery was, in fact, "born in Miami," and it continues to operate its brewing operation at that Miami location, despite also having a location in Fort Pierce for bottling and brewing. Thus, to the extent Plaintiffs contend that the breach of express warranty stems from Veza Sur's representations that it has ties to Miami, the Court reiterates that these statements are factually accurate and cannot therefore

form the basis of a breach. Furthermore, as noted above, Veza Sur's use of the hashtag slogan #HechaenMiami is more akin to puffery. Similarly, designating Veza Sur's beers as "authentic craft beers" is a term that is subject to widely varying interpretations. As such, the Court concludes that the allegations in the SAC fail to sufficiently state a claim on Count Four for breach of an express warranty because the statements that Plaintiffs allege served as the parties' express warranties can be construed as a "mere opinion[s] or commendation[s]" creating no express warranty. *See Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. 1st DCA 1984).

### 5. Breach of the Magnuson-Moss Warranty Act

Next, Defendants contend that this Court does not have jurisdiction to hear Plaintiffs' MMWA claim under Count Five. The MMWA allows Plaintiffs to bring suit: "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1). Paragraph (3), in turn, states that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(C). In the Motion to Dismiss, Defendants argue that this class action has less than 100 plaintiffs, and the plain statutory language of § 2310(d)(3)(C) therefore precludes Plaintiffs from pursuing their MMWA claim in Count Five.

The Court acknowledges that there is a split of authority on how the MMWA's jurisdictional and numerosity requirements affect the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which the Eleventh Circuit has not yet addressed. *Compare Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020), *and Ware v. Best Buy Stores, L.P.*, --- F.4th ---, No. 20-1641, 2021 WL 3197520, at *4 (7th Cir. July 29, 2021), *with Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013). Nevertheless, another district court in the Southern District

thoroughly addressed this issue earlier this year, and the Court finds its reasoning to be persuasive here. *See Lewis v. Mercedes-Benz USA, LLC*, --- F. Supp. 3d ---, No. 19-cv-81220, 2021 WL 1216897, at *9 (S.D. Fla. Mar. 30, 2021). Relying in part on the Court of Appeals for the Ninth Circuit's recent opinion in *Floyd*, the district court in *Lewis* explained that

> "Construing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred *named* plaintiffs would have the effect of overriding a part of the MMWA." [*Floyd*, 966 F.3d at 1035]. But the Supreme Court has cautioned that "the legislature's intent to repeal a statute must be 'clear and manifest.'" *Id.* (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007)). The Court agrees that "CAFA does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements[,]" *id.*, especially considering that CAFA relates to diversity jurisdiction, whereas jurisdiction under the MMWA is a matter of federal question jurisdiction. *See MacDougall v. Am. Honda Motor Co., Inc.*, No. 17-01079, 2017 WL 8236359, at *4 (C.D. Cal. Dec. 4, 2017) ("CAFA—a basis for federal courts to exercise jurisdiction over state law disputes between diverse parties—doesn't fill in the gaps for missing substantive requirements of a federal law.").

*Id.* (emphasis added). The court in *Lewis* ultimately held that it lacked subject-matter jurisdiction to hear the MMWA claims.

The Court agrees with the reasoning in *Lewis* and finds that class action plaintiffs asserting claims under the MMWA must satisfy the additional jurisdictional requirements set forth in § 2310(d)(3)(D). Plaintiffs in this case are the only two "named plaintiffs" for the purposes of the MMWA's jurisdictional limitation, which is fatal to their claim. *See* 15 U.S.C. § 2310(d)(3)(C). As such, the Court grants Defendants' Motion to Dismiss on Count Five because it lacks subject-matter jurisdiction over Plaintiffs' MMWA claim.[8]

---

[8] Even assuming, however, that this Court had jurisdiction over the MMWA claim, it would still be subject to dismissal. Indeed, a claim under the MMWA can only exist where there is a viable state law claim for breach of express warranty. *See Cardenas*, 418 F. Supp. 3d at 1110-11 ("Here, Cardenas's breach of implied warranty claim has been dismissed; thus, his correlating Magnuson-Moss Warranty Act claim must also be dismissed."); *Melton v. Century Arms, Inc.*, 243 F. Supp. 1290, 1304 (S.D. Fla. 2017) ("[A] Magnuson-Moss Warranty Act claim only exists if a valid breach of warranty claim is also stated." (citing *Bailey v.*

Case No. 20-cv-23392-BLOOM/Louis

### 6.   Unjust Enrichment

Finally, Defendants argue that the unjust enrichment claim in Count Three, which is pled in the alternative to the breach of express warranty claim, must also be dismissed. Defendants contend that it is duplicative of the claims arising at law and there was no inequitable retention of benefits where Plaintiffs received the value of the beers they purchased. Plaintiffs respond that, under Florida law, an unjust enrichment count pled in the alternative to a count for breach of express warranty will survive dismissal where the parties dispute the existence of an express warranty. They also note that the SAC sets forth clear allegations that Plaintiffs paid a premium for Veza Sur beer, which they believed was authentic craft beer, and that it would be unjust for Defendants to retain that benefit.

To assert a claim for unjust enrichment under Florida law, a plaintiff must establish the following three elements: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Merino v. Ethicon Inc.*, No. 20-cv-25308, 2021 WL 1749967, at *13 (S.D. Fla. May 4, 2021) (quoting *Sierra Equity Grp., v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009)). Moreover, as explained above,

---

*Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006)); *Burns v. Winnebago Indus., Inc.*, No. 8:11-cv-354-T-24-TBM, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012) ("Because Plaintiffs' breach of express warranty claim under Florida's UCC fails, their breach of express warranty claim under the MMWA necessarily fails also."), *aff'd*, 492 F. App'x 44 (11th Cir. 2012); *Hunter v. Marlow Yachts, Ltd., Inc.*, No. 8:09-cv-1772-T-TBM, 2011 WL 3794674, at *7 (M.D. Fla. Aug. 26, 2011) (stating that the MMWA claim was dependent upon a sustainable state law claim for breach of warranty); *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 323 (Fla. 3d DCA 2008) (stating that whether there has been a breach of a limited express warranty under the MMWA is governed by state law). Because the Court determined that Plaintiffs' state law claim for breach of express warranty must be dismissed, Plaintiffs' express warranty claim under the MMWA would also fail.

because Plaintiffs' unjust enrichment count sounds in fraud, it is subject to Rule 9(b)'s heightened plausibility standard. *See U.S. Stepe*, 325 F.R.D. at 710.

The Court concludes that the unjust enrichment claim in Count Three is subject to dismissal because, as with Plaintiffs' claims under FDUTPA, fraudulent misrepresentation, negligent misrepresentation, and misleading advertising, Plaintiffs fail to allege the "misrepresentations and omissions" that form the basis for their unjust enrichment claim with sufficient particularity. Without detailed factual allegations regarding the nature of these misrepresentations, as required under Rule 9(b), Plaintiffs fail to sufficiently allege a basis for the inequitable retention of a benefit conferred. *Davis v. Fresh Mkt., Inc.*, No. 19-cv-24245, 2020 WL 3489369, at *4 (S.D. Fla. June 26, 2020) ("Finally, to succeed in an unjust enrichment claim, a plaintiff must establish the existence of circumstances under which 'it would be inequitable for the defendants to retain [a benefit conferred by the Plaintiff] without paying the value thereof.'" (quoting *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012))). Therefore, the Court grants Defendants' Motion to Dismiss as to Count Three. *See BPI Sports, LLC*, 2016 WL 9375202, at *4-5 (dismissing unjust enrichment count for failing to satisfy Rule 9(b) heightened pleading requirements regarding fraudulent conduct at issue); *see also W.W. Sports Importadora Exportadora e Comercial LTDA v. BPI Sports, LLC*, No. 16-cv-60147, 2016 WL 11504100, at *4 (S.D. Fla. Aug. 11, 2016) (same).

## B.  Plaintiffs' Motion to Amend

In their Motion to Amend, Plaintiffs request leave to file a Third Amended Class Action Complaint for Injunctive and Other Relief, ECF No. [83-1] ("TAC"), to allege additional facts that were revealed during discovery regarding the relationship between AB and Veza Sur. These facts, Plaintiffs contend, will provide further support for their existing claims and will clarify the extent

of Defendants' efforts to deceive consumers about the Veza Sur brand. Specifically, Plaintiffs

request leave to amend to include the following additional allegations:

> 27. [AB] created an internal group that identified South-Eastern Latinx
> millennial consumers as a target audience for craft beer.
> 28. [AB] conducted market research and determined that marketing to
> Latinx millennials based on their Latinx identity created a negative brand inference
> as millennial and Generation Z Latinx consumers do not want to be pandered to
> because of their heritage.
> 29. [AB] determined through market research that authenticity, localness,
> and small size of breweries were essential characteristics for Latinx millennial
> consumers to determine a brewery is "craft" to induce purchases.
> 30. During the internal process to create this brand targeted specifically at
> Latinx millennials, [AB] purchased the brand "Spanglish" to speed up the opening
> process and add authenticity to further deceive consumers.
> 31. The employees tasked with managing Veza Sur advised it would be
> better to "separate" [AB's] participation from the brewery to better appeal to
> consumers of craft beer.
> 32. Despite the purported "separation" of [AB] from the Veza Sur Brand,
> [AB] fully controls the business including but not limited to the hiring process,
> marketing direction, sales goals incentives, wholesaler programs, and other aspects
> of the business.
> 33. To further this false narrative and "separation" of [AB] from the brand,
> Defendants crafted a story highlighting certain individuals solely for marketing
> purposes.
>     . . . .
> 64. Additionally, immediately after the Veza Sur brewery was opened, the
> beer sold by the brewery, and represented to be "Veza Sur" beer was not produced
> in Miami, or even in Florida, but by a different [AB] subsidiary in a different state.

ECF No. [83-1] ¶¶ 27-33, 64.

Plaintiffs also seek to clarify certain allegations regarding their intent to return to Veza Sur

in the future if Defendants end their deceptive practices. *Id.* ¶¶ 72, 75.

Defendants oppose the Motion to Amend, arguing that there is no good cause to allow

Plaintiffs to amend their pleading for a third time almost approximately nine months after the

expiration of the deadline to amend in this case. Rather, Defendants contend that Plaintiffs are

improperly attempting to circumvent a ruling on their Motion to Dismiss by seeking to amend the

factual allegations. Even assuming that there is good cause, Defendants argue that permitting the

proposed amendment at this stage in the proceedings would be unduly prejudicial, and that any additional amendment would be futile.

Upon review, the Court finds that the Motion to Amend must be denied because Plaintiffs have failed to act diligently or to demonstrate good cause for the delay in seeking leave to amend their SAC. Moreover, even if Plaintiffs' had diligently pursued the requested amendment and established good cause under Rule 16, the Court concludes that permitting amendment would be futile for the reasons explained throughout this Omnibus Order.

Because Plaintiffs filed their Motion to Amend after the November 23, 2020 deadline to amend pleadings in the Court's Scheduling Order, ECF No. [28], Plaintiffs "must first demonstrate good cause under Rule 16(b) before [the Court] will consider whether amendment is proper under Rule 15(a)." *Sosa*, 133 F.3d at 1419. Moreover, "[l]ack of diligence in pursuing a claim is sufficient to show lack of good cause." *Donley v. City of Morrow*, 601 F. App'x 805, 811 (11th Cir. 2015). Stated differently, "diligence is the key to satisfying the good cause requirement." *Taylor v. Genesee & Wy., Inc.*, No. 3:13-cv-1250-J-39MCR, 2015 WL 12838173, at *2 (M.D. Fla. Jan. 6, 2015) (quoting *De Varona*, 285 F.R.D. at 672-73). Further, "[t]he lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes," but also "include[s] a plaintiff's failure to seek the information it needs to determine whether an amendment is in order." *S. Grouts & Mortars, Inc.*, 575 F.3d at 1241. "The burden of establishing good cause [and] diligence rests squarely on the party seeking relief from the scheduling order." *Northstar Marine, Inc. v. Huffman*, No. 13-0037-WS-C, 2014 WL 3720537, at *3 (S.D. Ala. July 28, 2014); *see also TIC Park Ctr., 9 LLC v. Cabot*, No. 16-24569-CIV, 2018 WL 4828435, at *4 (S.D. Fla. Aug. 28, 2018).

Plaintiffs have filed to meet the good cause standard because they cannot show that the deadline to amend "could not be met despite the diligence of the party seeking the extension," or that they could not have sought an extension of the amendment deadline prior to its expiration. *Sosa*, 133 F.3d at 1419. As noted, Plaintiffs request to amend is prompted by evidence produced during discovery that informed Plaintiffs of additional facts that were relevant to their claims. Although Plaintiffs do not include the date on which they received the relevant discovery, they nonetheless argue that their requested relief is supported by good cause because they diligently pursued discovery and the additional facts in the TAC were not previously known to them. Despite Plaintiffs' representation that they diligently pursued discovery in this case, Magistrate Judge Louis's Discovery Order dated March 11, 2021, ECF No. [70], tells a slightly different story regarding diligence. Indeed, in her Discovery Order, Judge Louis refused to entertain Plaintiffs' objections to discovery produced by Defendants on October 23, 2020. In doing so, Judge Louis noted that Plaintiffs failed to attempt to confer about their objections to the October 23, 2020 discovery for two months. Then, three months later, Plaintiffs sought to raise those issues at a hearing before Judge Louis, but failed to provide any compelling reason for the delay. As such, Judge Louis concluded that Plaintiffs' challenges to Defendants' discovery was untimely and unsupported by good cause.

Even assuming that the record supported Plaintiffs' position that it diligently engaged in discovery in this case, the Court still fails to see how Plaintiffs exercised diligence in seeking to amend their pleading. Notably, Plaintiffs have not provided any explanation as to why their request was not timely filed, as is their burden to do. *See Huffman*, 2014 WL 3720537, at *3. In the absence of any compelling showing that Plaintiffs were diligent in pursuing this amendment, Rule 16's good cause inquiry ends and precludes allowing the untimely amendment. *Sosa*, 133 F.3d at 1418.

As Plaintiffs have failed to demonstrate good cause and due diligence in seeking the untimely amendment, the Court concludes that the Motion to Amend must be denied.[9]

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss Second Amended Complaint, **ECF No. [65]**, is **GRANTED**.

2.  Plaintiffs' Motion to Defer Ruling on Motion to Dismiss, **ECF No. [80]**, is **DENIED AS MOOT**.

3.  Plaintiffs' Motion for Leave to Amend Complaint, **ECF No. [83]**, is **DENIED**.

4.  Counts I, II, III, IV, VII, and IX of the Second Amended Class Action Complaint for Injunctive and Other Relief, **ECF No. [58]**, are **DISMISSED WITH PREJUDICE**, and Count VI is **DISMISSED WITHOUT PREJUDICE**.

5.  Pursuant to Federal Rule of Civil Procedure 58, the Court will separately enter Final Judgment.

6.  To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

7.  The Clerk of Court is directed to **CLOSE** the above-styled case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 18, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

---

[9] Furthermore, as noted above, the Motion to Amend would likely still have been denied, had Plaintiffs established good cause, because permitting amendment would be futile where the TAC would suffer from the same deficiencies as the SAC (and the FAC), which are discussed throughout this Omnibus Order.

Counsel of Record